Robert CLINE

v.

H.E. BUTT GROCERY COMPANY.

No. CivA G–99–293.

United States District Court,
S.D. Texas,
Galveston Division.

Dec. 23, 1999.

Scott H. Pawgan, Houston, TX, for Robert Cline, plaintiff.

Barbara L. Johnson, Wickliff & Hall, Houston, TX, for HE Butt Grocery Co, defendant.

## ORDER GRANTING DEFENDANT'S MOTION TO STAY PROCEEDINGS AND COMPEL ARBITRATION

KENT, District Judge.

Plaintiff Cline brings suit against his former employer, HEB Grocery Company, alleging causes of action under the Age Discrimination in Employment Act, 29 U.S.C. § 621 et seq. ("ADEA"), the Employee Retirement Income Security Act, 29 U.S.C. § 1001 et seq. ("ERISA"), and state law claims for breach of contract and negligence. Now before the Court is Defendant's Motion to Stay Proceedings and Compel Arbitration. For the reasons set forth below, Defendant's Motion is **GRANTED.**

### I. FACTUAL SUMMARY

Cline, who was forty-seven years of age at the time of his termination, served as a produce manager at Defendant's Friendswood store. He was earning $12 an hour, a wage at the high end of Defendant's pay range for produce managers. He was also guaranteed at least ten hours of overtime work per week.

In April 1997, Cline was working at the store when he injured his Achilles tendon. Cline learned shortly thereafter that the injury would require surgery. Because HEB does not subscribe to Texas workers' compensation, it is self-insured to cover injuries sustained by employees in the course of their employment. Cline sought to file a claim for his injury in order to cover the necessary surgery. However, the store manager allegedly refused on repeated occasions to file a claim.[1] The delay engendered by the failure to file allegedly aggravated the condition of Plaintiff's Achilles tendon, ultimately causing permanent damage.

On May 13, 1998, Cline was leaving the store at the end of his work day when a grocery stocker approached him in the parking lot and allegedly began verbally and physically threatening him. Subse-quently, HEB fired Cline for that incident, allegedly placing the blame for it on him. Cline alleges that at the time of his firing, HEB was advertising openings for produce managers at an hourly wage of $8.50, with no guarantees of overtime.

HEB elected to discontinue coverage under the Texas Workers' Compensation Act and established a voluntary occupational benefit plan for on-the-job injuries known as HEB's SMART Work Injury Benefit Plan (the "SMART Plan"). The SMART Plan provides two level of benefits: Basic coverage and Comprehensive coverage. If the worker opts for Basic coverage, he retains his right to sue HEB for on the job injuries. If a worker elects Comprehensive coverage, he receives an increased level of benefits but agrees to waive his right to sue and must submit his disputes to binding resolution. On August 27, 1994 Cline signed an Election and Agreement Form, opting for Comprehensive coverage.

Cline subsequently brought suit against HEB, alleging causes of action under the Age Discrimination in Employment Act, 29 U.S.C. § 621 et seq. ("ADEA"), the Employee Retirement Income Security Act, 29 U.S.C. § 1001 et seq. ("ERISA"), and state law claims for breach of contract and negligence. The ADEA claim is based on Plaintiff's contention that he was fired because of his age. The ERISA claims are based on Cline's contention that his termination deprived him of pension rights contrary to the provision of ERISA. The common-law negligence claim is based on Cline's contention that HEB failed to promptly process his medical claims under the SMART Plan, which Cline believes aggravated his medical condition.

On October 7, 1999 HEB filed its Motion to Stay Proceedings and Compel Arbitration. HEB seeks to steer Cline's negligence claim and all claims brought under ERISA, except those related to Defendant's pension plan, into binding arbitration pursuant to the terms of the SMART Plan.

---

1. Plaintiff alleges that the reason the store manager repeatedly refused to file the claim was because filing such a claim would reduce the manager's bonus.

## II. ANALYSIS

■ At the outset, the Court observes that there is a strong federal policy favoring the arbitration process. *See Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 25, 111 S.Ct. 1647, 1651, 114 L.Ed.2d 26 (1991) (noting that the Federal Arbitration Act manifests a liberal federal policy favoring arbitration agreements); *Shearson/American Express, Inc. v. McMahon*, 482 U.S. 220, 225, 107 S.Ct. 2332, 2337, 96 L.Ed.2d 185 (1987) (observing that there is a strong national policy encouraging the use of arbitration); *Life of America Ins. Co. v. Aetna Life Ins. Co.*, 744 F.2d 409, 412–13 (5th Cir.1984); *see also Eljer Mfg., Inc. v. Kowin Dev. Corp.*, 14 F.3d 1250, 1254 (7th Cir.1994) (defining arbitration as "a private system of justice offering benefits of reduced delay and expense").

The Federal Arbitration Act, 9 U.S.C. § 3, "mandates that when an issue is referable to arbitration pursuant to a written agreement, the district court *must* stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant is not in default in proceeding with such arbitration." *Williams v. Cigna Financial Advisors, Inc.*, 56 F.3d 656, 659 (5th Cir. 1995) (emphasis added). Thus in deciding whether the grant Defendant's Motion to Stay Proceedings and Compel Arbitration, the Court need only decide if the dispute is covered by the terms of a valid arbitration agreement; if so, a stay *must* be granted. *See id.*

■ When confronted with the question of arbitrability, a District Court must determine, as a threshold matter, whether the grievance before it is subject to arbitration. *See Folse v. Richard Wolf Med. Instruments Corp.*, 56 F.3d 603, 605 (5th Cir.1995); *Oil, Chem. & Atomic Workers Int'l Union, Local 4–227, AFL–CIO v. Phillips 66 Co.*, 976 F.2d 277, 278 (5th Cir.1992). This determination involves two inquiries. First, the Court asks whether there is a valid agreement to arbitrate; if so, the Court then asks whether the issue in question is covered by the valid agreement. *See Webb v. Investacorp, Inc.*, 89 F.3d 252, 257–58 (5th Cir.1996).

■ As to the first inquiry, the Court finds that the arbitration provision in the Smart Plan is valid, because it is a contractual provision supported by consideration and there are no equitable reasons to invalidate this private contractual agreement to arbitrate. Plaintiff's arguments to the contrary are examined below.

### A. Illusory Promise

Cline first argues that the arbitration agreement is invalid for want of consideration. According to Cline, because workers cannot change their election to Basic coverage once they have elected Comprehensive coverage, although HEB reserves the right to amend or terminate the Plan, HEB made an illusory promise to its workers and the arbitration provision lacks consideration.

Cline's claim that HEB's promise was illusory is an attack on the Election and Agreement Plan as a whole, and not the arbitration provision itself. Questions related to the enforcement of a contract as a whole are properly referable to an arbitrator; it is only when an attack is made on the arbitration clause *itself* that a court, rather than an arbitrator, should decide questions of validity. *See Rojas v. TK Communications, Inc.*, 87 F.3d 745, 749 (5th Cir.1996). The arbitration clause itself is supported by valid consideration: each party promised to relinquish their legal right to have a judicial forum adjudicate their disputes.

■ Even if this Court were empowered to consider the validity of the Election and Agreement as a whole, it would reject Cline's contention that HEB's right to terminate the Plan amounts to an illusory promise. If the Plan were to be terminated by HEB, the rights and obligations of the parties for on-the-job injuries incurred while the Plan was still in force would be governed by the terms of the Agreement, which is to say that the mutual promises of the parties would be enforceable. It is

true that if HEB terminated the Plan, then with respect to injuries incurred after the Plan was terminated, HEB would no longer be obliged to treat those injuries in accordance with the terms of the Plan. But at the same time, a worker would no longer be bound by the promises he made under the Plan either, and would have the right to sue for his injuries. This is not an illusory promise situation.

### B. Unconscionability of Fees

Cline contends that the arbitration agreement is unconscionable because it requires him to pay one half of the arbitration fees. Plaintiff fails to cites any authority for this proposition.

■ While the Fifth Circuit has apparently not addressed this issue, several other courts have concluded that the mere possibility that a plaintiff may have to share in the payment of the arbitrator's fees, without more, is not a sufficient reason to invalidate the arbitration agreement. *See Rosenberg v. Merrill Lynch, Pierce, Fenner & Smith,* 170 F.3d 1, 16 (1st Cir.1999) ("arbitration is often far more affordable to plaintiffs and defendants alike than is pursuing a claim in court."); *Koveleskie v. SBC Capital Mkts., Inc.,* 167 F.3d 361, 366 (7th Cir.1999); *Arakawa v. Japan Network Group,* 56 F.Supp.2d 349, 354 (S.D.N.Y.1999) ("the mere fact that a plaintiff faces the possibility of being charged arbitration fees, including sharing the arbitrator's compensation if directed to do so by the arbitrator, does not make the agreement to arbitrate Title VII claims unenforceable as a matter of law.").

■ In light of the fact that Plaintiff is making an ERISA claim, and that ERISA permits the recovery of attorneys' fees and costs, it is entirely possible that Plaintiff will not pay any significant fees at all. Indeed, the Plan expressly allows the arbi-

trator to award reasonable fees if the employee prevails on such a statutory claim. Thus at this point it is not clear how much Cline must pay, or whether Cline will have to pay anything at all. Plaintiff offers no information as to Cline's financial status or his ability to pay for the cost of arbitration, but he appears to be a managerial employee making at least $35,000 per year.[2] The Court cannot simply assume that such a worker is incapable of paying one half of the arbitration fees.

Even if the Court were convinced that Cline cannot afford to pay for the arbitration proceeding, the better solution would be to nullify the fee provisions of the arbitration agreement and have HEB shoulder the expense. Plaintiff's proposed solution—abrogation of the entire arbitration agreement—is unnecessarily radical. *See Arakawa,* 56 F.Supp.2d at 354 ("the possibility that a plaintiff may be required to pay arbitration fees is not, by itself, a sufficient reason to invalidate an agreement to arbitrate ... because the arbitral panel may not in fact require the plaintiff to pay fees and, if a plaintiff believes that excessive fees have been levied against him or her, judicial review of the imposition of the fees is available after arbitration."). The Court concludes that Cline has failed to demonstrate that the arbitration provision is unconscionable simply because he may eventually have to pay a portion of the arbitrator's fees.

### C. Waiver of Contractual Arbitration Rights

■ There is a strong presumption against waiver of arbitration. *See Subway Leasing Corp. v. Forte,* 169 F.3d 324, 326 (5th Cir.1999); *Williams,* 56 F.3d at 661; *see also Lawrence v. Comprehensive Bus. Servs. Co.,* 833 F.2d 1159, 1164 (5th Cir. 1987) ("Waiver of arbitration is not a favored finding and there is a presumption against it.").

2. In his Complaint, Cline states he was a produce manager making $12/hour with a guarantee of 10 hours per week of overtime. Twelve dollars and hour at forty hours a week for fifty-two weeks a year equals approximate-

ly $25,000 per year. Ten hours of overtime per week at eighteen dollars an hour adds another $9360, for a total annual salary of approximately $35,000.

Waiver of a contractual right of arbitration can only occur when a party has "substantially invoked the judicial process," and has done so to the detriment or prejudice of the other party. *See Subway Leasing Corp.,* 169 F.3d. at 326; *Miller Brewing Co v. Fort Worth Distrib. Co.,* 781 F.2d 494, 497 (5th Cir.1986) ("Waiver will be found when the party seeking arbitration substantially invokes the judicial process to the detriment of the other party.").

Plaintiff argues that Defendant has waived its contractual right to arbitration because it waited too long before asserting its right to arbitrate. Plaintiff claims it has been prejudiced by this delay because Defendant has availed itself of discovery procedures which are not available in an arbitral forum.

The judicially disfavored finding that a defendant has waived its right to arbitrate is hardly merited in these circumstances. HEB moved to stay and enforce the arbitration agreement a mere five months after Cline filed his suit. Only a minimal amount of routine discovery has transpired, and there is no showing that Cline has been harmed by this five month delay. Indeed, since Cline's ADEA claim is not referable to arbitration, the discovery already conducted would likely have been conducted in any event. The Court rejects Cline's argument that HEB's conduct amounts to a waiver of a contractual right to arbitrate. *See Walker v. J.C. Bradford & Co.,* 938 F.2d 575, 577 (5th Cir.1991) (reversing trial court's finding of waiver where defendant removed to federal court, answered, participated in discovery, and then, thirteen months later, moved for enforcement of arbitration provision). "When only a minimal amount of discovery has been conducted, which may also be useful in an arbitration proceeding, the court should ordinarily not infer waiver based on prejudice to the party opposing the motion to stay litigation." *Tenneco Resins, Inc. v. Davy Int'l, AG,* 770 F.2d 416, 420–21 (5th Cir.1985) (no waiver where defendants answered, moved for protective order, agreed to extend discovery period and then, after seven months, requested enforcement of arbitration provision); *Williams,* 56 F.3d at 661 (finding no waiver where defendant removed to federal court, moved to dismiss, and then filed a motion to stay as soon as it discovered dispute was arbitrable).

The Court concludes that Plaintiff has failed in his attempt to demonstrate that the arbitration provision is invalid. Consequently, the Court must refer to arbitration those claims which the arbitration provision covers. *See Webb,* 89 F.3d at 257–58. Plaintiff's negligence claim and all claims brought under ERISA, with the exception of those related to Defendant's pension plan, are plainly covered by the arbitration provision, and thus are properly referable to an arbitral forum. "Unless it can be said with positive assurance that an arbitration clause is not susceptible of an interpretation which would cover the dispute at issue, then a stay pending arbitration should be granted." *Wick v. Atlantic Marine, Inc.,* 605 F.2d 166 (5th Cir.1979); *see also Neal v. Hardee's Food Systems, Inc.,* 918 F.2d 34, 37 (5th Cir. 1990) (quoting *Wick* ).

Plaintiff complains that his ADEA claim is not referable to arbitration unless the agreement states in clear and unmistakable language that the agreement applies to ADEA claims. But Defendant does not contend that the ADEA claim must be referred to arbitration; Defendant seeks only to have an arbitrator decide the common-law negligence claims and the ERISA claims.

The fact that some claims will be addressed by this Court and some claims are referable to arbitration is not a reason to refuse to grant Defendant's Motion to Stay Proceedings and Compel Arbitration. "It is settled in this circuit that if some claims are arbitrable and others are not and they are easily severable, that the court should stay proceedings as to those claims which are arbitrable." *Wick,* 605 F.2d at 168.

The Court concludes that Plaintiff's common law negligence claim, as well as

all of his ERISA claims, with the exception of those claims related to Defendant's pension plan, are within the scope of a valid arbitration provision. Consequently, Defendant's Motion to Stay Proceedings and Compel Arbitration is **GRANTED.**

## III. STRAWN V. AFC ENTERPRISES

Judging from the fourteen page Supplemental Reply HEB hastily filed on December 2, 1999, the Court's recent decision in *Strawn v. AFC Enterprises* set off a minor panic in the offices of Defendant's counsel. *See Strawn v. AFC Enterprises, Inc.*, No. Civ. 99–241, 1999 WL 1009706 (S.D.Tex. Nov.4, 1999). Although the Court always appreciates such a well-reasoned and eloquent legal brief, Defendant's counsel need not have been so alarmed, because *Strawn* is inapposite on the facts of this case.

In *Strawn*, an employee was forced, as a condition of employment, to waive her right to sue and required to submit all claims to arbitration. In return, she received benefits that were substantially less than those which would otherwise be available to her under the Workers' Compensation scheme. This Court held that forcing a worker to waive her right to sue in exchange for miserly benefits was contrary to the public policy of Texas by undermining the "quid pro quo" exchange between employer and employee envisioned by the Texas Legislature when it enacted the Workers' Compensation system.

In contrast, HEB's plan is *entirely voluntary:* an employee is free to elect Basic coverage and retain his right to sue for his on-the-job injuries, or opt for greater Comprehensive coverage at the loss of his right to sue. Second, there is no showing that the benefits available to an HEB employee under the SMART Plan are so inferior to that which would otherwise be available under the Workers's Compensation system as to implicate the public policy concerns which motivated the *Strawn* decision. Finally, a prospective HEB employee's options are explained in admirably plain language in HEB's employment literature. On even a cursory reading, it is very clear to an employee what he stands to gain, and to lose, by electing Basic or Comprehensive coverage under the SMART Plan. In short, *Strawn* is simply inapplicable to this factually dissimilar case.

## IV. CONCLUSION

For the reasons set forth above, Defendant's Motion to Stay Proceedings and Compel Arbitration is **GRANTED.** Therefore it is **ORDERED** that Plaintiff must arbitrate his negligence claims and all claims brought under ERISA, with the exception of those relating to Defendant's pension plan. These proceedings are **STAYED** pending completion of this arbitration. The parties are **ORDERED** to file no further pleadings on this issue, including motions to reconsider and the like. The parties are **ORDERED** to bear their own taxable costs and expenses incurred herein to date.

**IT IS SO ORDERED.**