**In re H.E. BUTT GROCERY COMPANY, et al., Relators.**

No. 14–99–01299–CV.

Court of Appeals of Texas, Houston (14th Dist.).

April 27, 2000.

Mark A. Giltner, Wallace B. Jefferson, San Antonio, for relators.

John Paul Leibowitz, Stafford, for respondents.

Panel consists of Justices ANDERSON, HUDSON and LEE.*

# OPINION

JOHN S. ANDERSON, Justice.

Relator, H.E. Butt Grocery Company ("HEB") seeks a writ of mandamus directing the trial court to vacate its order denying HEB's motion to compel arbitration under the Federal Arbitration Act (FAA). The real party in interest, Harry Swinton ("Swinton"), sued HEB, a non-subscriber under the Texas Workers' Compensation Act (TWCA), for alleged personal injuries suffered in the course and scope of employment. HEB contends the trial court clearly abused its discretion in refusing to compel arbitration of Swinton's claims in the face of a valid arbitration agreement contained in the "Election and Agreement Form" ("the benefit agreement") signed by Swinton. Because the benefit agreement, including the arbitration provision, is enforceable, we conditionally grant the writ.

## I. BACKGROUND

In January 1998, Swinton filed the underlying negligence suit seeking damages for alleged personal injuries suffered two years earlier while in the course and scope of his employment for HEB. HEB answered and immediately moved to compel arbitration based on the benefit agreement. In signing this agreement, Swinton elected comprehensive coverage rather than basic coverage under HEB's Work Injury Benefit Plan ("the HEB Plan" or

"the Plan"). By electing comprehensive coverage, Swinton was eligible for a heightened level of benefits. In return for these benefits, Swinton agreed to (1) waive his right to sue HEB, (2) release HEB from all existing and future claims for occupational injury, death or disease, (3) limit his recovery to the benefits provided by the Plan, and (4) indemnify HEB from any claims or lawsuits other than those arising directly under the Plan. More important for purposes of this proceeding, Swinton agreed to binding arbitration as follows:

> It is agreed that any and all disputes, claims (whether tort, contract, statutory or otherwise) and/or controversies which relate, in any manner, to this Agreement, the Plan or Trust *or to the occupational injury, death or disease of Partner* shall be submitted to final and binding arbitration under the Federal Arbitration Act, in accordance with the terms and conditions outlined in the SPD [Summary Plan Description] under the heading "Arbitration of Disputes." The claims covered by this agreement to arbitrate include, but are not limited to, those which relate to the following:
>
> a. The formation, application and interpretation of *this* Agreement.
>
> b. Eligibility for benefits from the Trust coverage under the Plan *or claims for damages or monetary award.*
>
> c. That H–E–B has discharged or in any manner discriminated against Partner because Partner in good faith filed a claim, hired a lawyer to represent him or her in a claim instituted, or caused to be instituted in good faith, any proceeding under the Agreement, the Plan or the TWCA, or has testified in any such proceeding. (emphasis in the original)

In contrast, if Swinton had elected basic coverage, either by choosing that option in the benefit agreement or by not signing the agreement at all, Swinton would have been eligible to receive less benefits but

---

* Senior Justice Norman R. Lee sitting by assignment.

would have retained the right to sue HEB as all employees of non-subscribers are permitted to do. *See* TEX. LAB.CODE ANN. § 406.033 (Vernon 1996).

In response to HEB's motion to compel arbitration, Swinton filed pleadings and motions asserting, in part, that the benefit agreement violated public policy and was illegal, illusory, unconscionable, and the product of fraud. On October 18, 1999, the trial court held a hearing. Both Swinton and HEB employee Don Roberson testified at this hearing. Swinton testified that some time after orientation, an unidentified HEB representative placed documents in front of him and told him, "either you sign these documents right now or . . . you don't work for HEB." Swinton testified that he signed the documents in the place directed by the HEB representative. Swinton also testified that he was not given time to read or discuss the documents, but only to glance over them. Roberson testified that all employees are given an opportunity to read the benefit agreement and ask questions. According to Roberson, employees are even allowed to take the agreement home, but are told to return it promptly to avoid default to basic coverage. Although he did not witness Swinton's signature on the benefit agreement, Roberson testified that he did not know of anyone at HEB who forced employees to sign the agreement.

On November 15, 1999, the trial court signed an order denying HEB's motion to compel arbitration and staying all proceedings for ninety days so that HEB could seek mandamus relief. Although that stay has expired, HEB has not sought further temporary relief.

## II. MANDAMUS

 Traditionally, the writ of mandamus issued only to compel the performance of a ministerial act or duty. *See Walker v. Packer*, 827 S.W.2d 833, 839

(Tex.1992). The writ is also available to correct a clear abuse of discretion committed by the trial court. *See id.* A trial court clearly abuses its discretion if "it reaches a decision so arbitrary and unreasonable as to amount to a clear and prejudicial error of law." *Id.* (quoting *Johnson v. Fourth Court of Appeals*, 700 S.W.2d 916, 917 (Tex.1985)). As to factual matters, the relator must establish that the trial court could reasonably have reached only one decision. *See Walker*, 827 S.W.2d at 840. However, review of a trial court's determination of the legal principles controlling its ruling is much less deferential. *See id.* A trial court has no discretion in determining what the law is or applying the law to the facts. *See id.*

 Mandamus is appropriate when a state court erroneously denies a motion to compel arbitration under the federal scheme. *See In re Valero Energy Corp.*, 968 S.W.2d 916 (Tex.1998). At oral argument, Swinton's counsel conceded that the FAA applies to the benefit agreement in question.[1] Because HEB complains the trial court abused its discretion in denying arbitration under the FAA in the face of a valid arbitration agreement, mandamus review is appropriate.

## III. ARBITRATION IS FAVORED

 Before addressing HEB's complaint, we recognize that federal law strongly favors arbitration. *See Cantella & Co., Inc. v. Goodwin*, 924 S.W.2d 943, 944 (Tex.1996) (per curiam). A presumption exists in favor of agreements to arbitrate under the FAA. *See id.* Courts must resolve any doubts about an agreement to arbitrate in favor of arbitration. *See id.* A party seeking to compel arbitration must establish the existence of an arbitration agreement and show that the claims raised fall within the scope of that agreement. *See In re Oakwood Mobile Homes,*

---

1. As set forth above, section 4 of the benefit agreement expressly provides that arbitration

is under the FAA.

*Inc.,* 987 S.W.2d 571, 573 (Tex.1999) (per curiam). Once a party establishes a claim within the scope of the arbitration agreement, the trial court must compel arbitration and stay its own proceedings unless the party opposing arbitration meets its burden of presenting evidence that prevents enforcement of the agreement. *See id.; see also Cantella,* 924 S.W.2d at 944.

■ In support of its motion to compel arbitration, HEB produced the benefit agreement signed by Swinton. As quoted above, this agreement included a provision agreeing to submit any claims for occupational injury to binding arbitration under the FAA, including claims that relate to the "formation, application and interpretation of *this* Agreement" and *"claims for damages or monetary award."* Thus, HEB established the existence of an arbitration agreement and that Swinton's personal injury claim fell within the scope of that agreement. Accordingly, the trial court was required to compel arbitration unless Swinton proved that the agreement was procured in an unconscionable manner, induced or procured by fraud or duress or that HEB waived arbitration under the agreement. *See Oakwood,* 987 S.W.2d at 573. The trial court's order in the underlying case does not specify the grounds for denying arbitration. Because an order denying arbitration must be upheld if it is proper on any basis considered by the trial court, HEB has addressed, and we will also address, all of Swinton's defenses to the agreement. *See City of Alamo v. Garcia,* 878 S.W.2d 664, 665 (Tex.App.-Corpus Christi 1994, no writ).

## IV. VALIDITY OF THE BENEFIT AGREEMENT

### A. Questions for the Arbitrator

Swinton contends the benefit agreement is unenforceable on several grounds. First, Swinton argues the benefit agreement is illegal because it does not comply with the provisions of 28 Tex. Adm.Code § 5.6302(b). Second, he argues the benefit

agreement is an unconscionable contract of adhesion not only because HEB coerces employees to sign the agreement, but also because the agreement requires employees to waive their common law rights, and to bear the costs of arbitration. Third, he argues the benefit agreement is illusory because HEB retains the right to amend or terminate the Plan at any time. Fourth, he argues the benefit agreement was procured by fraud because an HEB representative directed him to sign the agreement electing comprehensive benefits (and arbitration) as a condition of employment and without giving him the opportunity to fully read or discuss the agreement. Finally, Swinton argues that the benefit agreement is void as against public policy because it provides substantially less benefits than the TWCA and requires arbitration of all disputes.

■ HEB responds that the enforceability of the benefit agreement or the validity of the Plan are matters for the arbitrator, not the trial court. As a general rule, "questions related to the enforcement of a contract as a whole are properly referable to an arbitrator; it is only when attack is made on the arbitration clause itself that a court, rather than an arbitrator, should decide questions of validity." *See Prima Paint Corp. v. Flood & Conklin Mfg. Co.,* 388 U.S. 395, 402–4, 87 S.Ct. 1801, 1805–6, 18 L.Ed.2d 1270 (1967); *see also Cline v. H.E. Butt Grocery Co.,* 79 F.Supp.2d 730, 732 (S.D.Tex.1999).

Our resolution of this enforceability issue is derived from *Strawn v. AFC Enterprises,* 70 F.Supp.2d 717 (S.D.Tex.1999). There, an employee sued her non-subscriber employer for personal injuries suffered in the course and scope of employment. *See id.* at 719. The employer moved for arbitration based on the "Value Deal Agreement" signed by the employee as a condition of her employment. *See id.* Under the Value Deal Agreement, the employee agreed to submit "all claims and disputes for bodily injury" to arbitration in return for a heightened level of benefits

under the employer's "Employee Injury Benefit Plan." *See id.* In denying the employer's motion to compel arbitration, the court rejected the employer's claim that public policy arguments made by the employee were directed to the Value Deal Agreement as a whole and not the arbitration clause. *See id.* at 727. The court stated that the *Prima Paint* rule is applicable when the existence of an arbitration agreement is in issue, not when the issue is "whether legal constraints external to the parties' agreement foreclose[s] the arbitration of ... claims." *See id.* Because the Value Deal Agreement was (1) "an entirely separate document, not a clause contained within a larger employment contract addressing many other issues," and (2) "concerned almost exclusively with establishing arbitration as the means for resolving disputes between the parties," the court construed the employee's attack on the Value Deal Agreement as an attack on the arbitration clause, thus appropriate for court resolution. *See id.*

Similarly here, the benefit agreement is not part of a larger employment agreement addressing a wide range of employment issues. Rather, it is a separate document, the sole purpose of which was to give Swinton the option of electing comprehensive benefits and arbitration or basic benefits and the right to sue. In addition, Swinton claims there are "external legal constraints" to the benefit agreement's enforceability. Namely, he complains that he was forced to sign the portion of the benefit agreement electing comprehensive coverage and therefore, arbitration, without the opportunity to read the agreement. Accordingly, we construe this complaint as an attack on the arbitration provision. We recognize that the benefit agreement, by its express terms, requires the parties to arbitrate claims related to the agreement's "formation, application and interpretation." However, because the benefit agreement is almost exclusively concerned with establishing arbitration as the means for resolving the parties' disputes, we hold that

this provision does not preclude judicial review of Swinton's complaints about the agreement. *See Prima Paint,* 388 U.S. at 402–04, 87 S.Ct. 1801. Turning now to those complaints, we hold that the agreement is enforceable for the reasons discussed below.

**B. Illegality**

Swinton first argues the benefit agreement is illegal because it violates 28 Tex. Admin. Code § 5.6302. Subsection (a) provides in pertinent part:

> No person, agent, or entity may represent any individual or group policy of insurance or other evidences of insurance coverage as a substitute for a policy of workers compensation insurance....

Subsections (b) also provides as follows:

> All individual or group policies of insurance or other evidences of insurance coverage which provide benefits to employees and which are marketed through (on a franchise, list bill, or other collective basis) employers that have elected, or may in the future elect, to be nonsubscribers to the workers' compensation system shall include the following statement in 10–point boldface type on the first page of the policy and on the first page of all materials used in advertising, marketing, and explaining the policy: "THIS IS NOT A POLICY OF WORKERS' COMPENSATION INSURANCE. THE EMPLOYER DOES NOT BECOME A SUBSCRIBER BY PURCHASING THIS POLICY, AND IF THE EMPLOYER IS A NON–SUBSCRIBER, THE EMPLOYER LOSES THOSE BENEFITS WHICH OTHERWISE ACCRUE UNDER THE WORKERS' COMPENSATION LAWS. THE EMPLOYER MUST COMPLY WITH THE WORKERS' COMPENSATION LAW AS IT PERTAINS TO NON–SUBSCRIBERS AND THE REQUIRED NOTIFICATIONS THAT MUST BE FILED AND POSTED.

■ Because the benefit agreement does not contain the above notice, Swinton contends the agreement is illegal and void. *See Lewis v. Davis,* 145 Tex. 468, 199 S.W.2d 146, 148–49 (1947) ("a contract to do a thing which cannot be performed without a violation of the law is void"). Swinton cites no authority, and we can find none, to support Swinton's contention. Indeed, at the motion to compel hearing, the trial court suggested that section 5.6302 applies only to the sale of substitute workers' compensation insurance *to* employers. However, assuming section 5.6302 applies to the sale of workers' compensation insurance *by* employers, HEB did not *sell insurance.* Rather, HEB gave Swinton the option, free of cost, to select either comprehensive or basic benefits under an independent benefit plan that is funded by a company-created trust and administered by a qualified trustee. Nothing in the benefit agreement contemplates a sale of insurance. Swinton responds that even if there was no sale of insurance, HEB failed to provide the statutory notice required by section 5.6302(b) for "other evidences of insurance coverage marketed through employers." We disagree. The benefit agreement clearly provides employees with notice that HEB is a non-subscriber and that it does not provide workers compensation insurance. Section 2 of the benefit agreement entitled, "H–E–B DOES NOT PROVIDE WORKERS' COMPENSATION BENEFITS," states:

> H–E–B has elected to discontinue coverage under the *Texas Workers' Compensation Act ("TWCA")* effective September 15, 1994. Therefore, effective September 15, 1994, H–E–B shall be a non-subscriber to the TWCA, and the Partner shall not be entitled to benefits under the TWCA.

Likewise, page 3 of the Summary Plan Description ("SPD"),[2] which is incorporated by reference in the benefit agreement, contains a section entitled "**HEB REPLACED WORKERS' COMPENSATION.**" In another section on that same page, the SPD plainly states that "HEB is not covered by the TWCA." Thus, by providing notice to employees that HEB was a non-subscriber and did not provide workers' compensation insurance, we hold that the benefit agreement substantially complies with section 5.6302.

■ Nevertheless, Swinton points to Don Roberson's testimony that employees are told the HEB Plan is "insurance" and "a substitute for workers' compensation." This is inadmissible parol evidence that should not have been considered by the trial court. Section 7 of the benefit agreement is entitled "PARTNER[3] REPRESENTATIONS," and in pertinent part it provides

> Partner warrants and represents that no promise or representation of any kind has been made to the Partner except as described in the Agreement....

■ The parol evidence rule precludes consideration of extrinsic evidence to contradict, vary or add to the terms of an unambiguous written agreement absent fraud, accident or mistake. *See Gold Kist, Inc. v. Carr,* 886 S.W.2d 425, 429 (Tex. App.-Eastland 1994, writ denied). The parol evidence rule is not a rule of evidence, but one of substantive law. *See King v. Fordice,* 776 S.W.2d 608, 612 (Tex. App.-Dallas 1989, writ denied). Swinton claims a violation of section 5.6302, not fraud. Indeed, there is no allegation and no proof that Swinton signed the benefit agreement because HEB misrepresented its Plan to him as insurance or as a substi-

---

2. The SPD is a twenty-eight page booklet describing and comparing comprehensive and basic coverage under the HEB Plan and setting forth the procedure for arbitration under comprehensive coverage. The benefit agreement was attached to the end of this booklet, which was given to prospective HEB employees at orientation.

3. Under the benefit agreement, an employee is identified as the Partner.

tute for workers' compensation insurance.[4] In fact, the benefit agreement plainly states that HEB is a non-subscriber, that its benefit plan does not provide workers' compensation insurance, and that no representations to the contrary have been made to the employee. Thus, the trial court was not free to consider extrinsic evidence contradicting the unambiguous terms of that agreement.

## C. Illusory

▓▓▓▓ Swinton next argues that the benefit agreement is unenforceable because HEB's promise to provide benefits under the Plan is illusory. A promise is illusory when it fails to bind the promisor, who retains the option of discontinuing performance. *See Light v. Centel Cellular Co.*, 883 S.W.2d 642, 645 (Tex.1994); *see also O'Farrill Avila v. Gonzalez*, 974 S.W.2d 237, 244 (Tex.App.-San Antonio 1998, writ denied). Swinton claims that HEB's promise to pay benefits is illusory because (1) section 6 of the benefit agreement gives "HEB and the Trustees ... the right to amend or terminate the Plan," and (2) the SPD gives the Plan administrator "complete and final discretionary authority to interpret the Plan." Thus, Swinton contends that while he waived his right to sue HEB and limited his recovery solely to the benefits under the Plan, HEB could deprive him of benefits at any time. This contention is without merit.

▓▓▓ First, the SPD specifically provides that while "HEB expects to continue the Plan indefinitely ... no amendment or termination of the Plan will affect any claim for expenses incurred prior to the date the amendment or termination is adopted, except as provide by law." In other words, HEB's right to terminate the Plan does not deprive Swinton of benefits already accrued under the Plan. Second, if HEB terminates the Plan, it will leave Swinton with all of his common law rights against HEB as a non-subscriber. *See* Tex. Lab.Code Ann. § 406.033(a).[5] Third, assuming HEB's promise to provide benefits under the Plan is illusory, the parties formed a unilateral contract when HEB actually provided, and Swinton accepted, benefits in return for Swinton's promise not to sue. *See Light*, 883 S.W.2d at 647 n. 6 (recognizing that a unilateral contract can be formed when only one promise is illusory because "the non-illusory promise can serve as an offer, which the promisor who made the illusory promise can accept by performance").[6] Finally, the fact that the plan administrator has discretion to interpret the Plan does not excuse HEB from its obligation to pay benefits. It merely provides the means by which a court can review the administration of the Plan under ERISA.[7] *See e.g., Matassarin v. Lynch*, 174 F.3d 549, 563–64 (5th Cir. 1999), *cert. denied,* — U.S. ——, 120 S.Ct. 934, 145 L.Ed.2d 813 (2000). Clearly, the benefit agreement is not illusory.

## D. Unconscionability

▓▓▓▓ Swinton also argues the benefit agreement is an unconscionable contract of adhesion. In a contract of

4. Although Roberson acknowledged that he tells people that HEB's Plan is a substitute for workers' compensation and provides the same benefits, there is no proof that such statements were made to Swinton.

5. In an action against an employer who does not have workers' compensation insurance coverage to recover damages for personal injuries or death sustained by an employee in the course and scope of the employment, it is not a defense that:

(1) the employee was guilty of contributory negligence;

(2) the employee assumed the risk of injury or death; or
(3) the injury or death was caused by the negligence of a fellow servant.
Tex. Lab.Code Ann. § 406.033(a).

6. In support of its motion to compel arbitration, HEB offered the affidavit of its Plan Administrator showing that HEB paid Swinton $18,509.68 in medical benefits and $8,596.68 in wage replacement benefits.

7. *See* U.S.C. § 1001 et seq. (Employee Retirement Income Security Act of 1974).

adhesion, one party has absolutely no bargaining power or ability to change the contract terms. *See Oakwood*, 987 S.W.2d at 574.[8] Adhesion contracts are not automatically unconscionable or void. *See id.* As we noted, Swinton argues the benefit agreement is unconscionable because (1) HEB forces employees to sign the benefit agreement as a condition of employment, (2) the agreement requires Swinton to waive all his rights, but does not require HEB to waive all of its defenses, and (3) the agreement requires Swinton to bear the costs of arbitration. This first argument deals with procedural unconscionability because it concerns assent to the benefit agreement and focuses on the facts surrounding the bargaining process. *See Pony Express Courier v. Morris*, 921 S.W.2d 817, 821 (Tex.App.-San Antonio 1996, no writ). The other two arguments deal with substantive unconscionability because they concern the fairness of the benefit agreement. *See id.*

In determining whether arbitration is proper, the only question for the courts is procedural unconscionability, i.e., whether the arbitration agreement was procured in an unconscionable manner. *See Oakwood*, 987 S.W.2d at 573 n. 3 (noting that "whether the terms and condition of an arbitration agreement are themselves unconscionable is a matter which must be submitted to the designated arbitrator"); *see also In re Foster Mold, Inc.*, 979 S.W.2d 665, 667–68 (Tex.App.-El Paso 1998, orig. proceeding) ("procedural unconscionability—an issue which relates to the actual making or inducement of the agreement to arbitrate is not subject to arbitration, but rather is reserved for appropriate judicial review"). Therefore, we need not address the arguments relating to substantive unconscionability.

In support of his argument of procedural unconscionability, Swinton relies on the affidavits of three other HEB employees, who stated that they were required to sign the benefit agreement as a condition of employment. According to Swinton, these affidavits were offered to impeach Roberson's testimony that HEB does not force employees to sign the benefit agreement. Because unconscionability is determined on an individual case-by-case basis, HEB's policy and the circumstances of other HEB employees are irrelevant. *See Pony Express*, 921 S.W.2d at 821.

Here, the only proof of unconscionability is Swinton's testimony. As we described, Swinton testified that an HEB representative directed him to sign the benefit agreement electing comprehensive benefits (and arbitration) as a condition of employment and without giving him the opportunity to fully read or discuss the agreement. This testimony is also inadmissible parol evidence that should not have been considered by the trial court. *See Gold Kist*, 886 S.W.2d at 429. The unambiguous terms of the benefit agreement support the conclusion that Swinton was aware of the agreement to arbitrate when he signed the benefit agreement. Below the title, "ELECTION OF COMPREHENSIVE BENEFITS, RELEASE, WAIVER, INDEMNITY AND ARBITRATION AGREEMENT," the benefit agreement conspicuously provides the following notice:

*NOTICE: BY SIGNING THIS AGREEMENT, YOU AGREE TO RELEASE AND WAIVE CERTAIN RIGHTS TO SUE YOUR EMPLOYER, THE TRUST, THE TRUSTEE OF*

---

**8.** It has also been defined "as a standardized contract form for consumer goods and services that are offered on a 'take it or leave it' basis without affording the consumer a realistic opportunity to bargain and under such conditions that the consumer cannot obtain the desired product or services except by acquiescing." *See Dillee v. Sisters of Charity*

*Incarnate Word Health Care Sys.*, 912 S.W.2d 307, 310 n. 4 (Tex. App–Houston [14th Dist.] 1995, no writ); *see also* BLACK'S LAW DICTIONARY 318–19 (7th ed.1999). An arbitration agreement, however is not a good or service. *See Palm Harbor Homes, Inc. v. McCoy*, 944 S.W.2d 716, 722 (Tex.App.-Fort Worth 1997, orig. proceeding).

*THE H.E. BUTT GROCERY COMPA-NY WELFARE BENEFIT TRUST, THE PLAN, AND THE PLAN AD-MINISTRATOR IN EXCHANGE FOR THE AGREEMENT TO PROVIDE CERTAIN BENEFITS THROUGH THE TRUST. YOU AGREE TO IN-DEMNIFY YOUR EMPLOYER AND THE RELEASED PARTIES IN CER-TAIN CIRCUMSTANCES AND YOU AGREE TO ARBITRATE ALL FU-TURE DISPUTES. THIS AGREE-MENT AFFECTS YOUR LEGAL RIGHTS! READ THIS AGREE-MENT CAREFULLY AND MAKE SURE YOU UNDERSTAND IT BE-FORE SIGNING IT!*

In addition to this notice, section 7 of the agreement provides in pertinent part:

> ... Partner further warrants and represents that the Partner has entered into this Agreement voluntarily without duress or coercion and acknowledges that he or she has been given the opportunity to discuss this Agreement with his or her private legal counsel and has availed himself or herself of that opportunity to the extent Partner wishes to do so.

 Thus, the benefit agreement not only warned Swinton to read the agreement before signing it, but also contained Swinton's warranty that he entered the agreement voluntarily and with the opportunity to discuss it with counsel. There is no proof that HEB hid or misrepresented the terms of the arbitration agreement or that it made any misrepresentations regarding arbitration. Further, there is no proof that at the time Swinton signed the benefit agreement, he was unaware of arbitration as a remedy provided by the benefit agreement. Indeed, a full three pages of the SPD are devoted to explaining the consequences of an employee's election and arbitration procedures. A party who signs a contract containing an arbitration provision does not have to be told about the provision, but is presumed to know the contents of the contract. *See*

*EZ Pawn Corp. v. Mancias,* 934 S.W.2d 87, 90 (Tex.1996); *see also Emerald Texas, Inc. v. Peel,* 920 S.W.2d 398, 402 (Tex. App.-Houston [1st Dist.] 1996). In *Cline,* the federal district court examined the identical benefit agreement and rejected the HEB employee's unconscionability claim. *See* 79 F.Supp.2d at 732–33. In recognizing that "HEB's plan is entirely voluntary," the court observed:

> ... a prospective HEB employee's options are explained in admirably plain language in HEB's employment literature. On even a cursory reading, it is very clear to an employee what he stands to gain, and to lose, by electing Basic or Comprehensive coverage under the SMART Plan.

*See id.* at 735.

Based on the plain and unambiguous terms of the benefit agreement and the absence of any proof that HEB misled Swinton with respect to arbitration, we hold that the trial court could only have reached one conclusion; that Swinton willingly agreed to arbitration. *See Walker,* 827 S.W.2d at 840.

### E. Fraudulent Inducement

 Swinton further argues that the benefit agreement was procured by fraud. To establish fraud in the formation of an arbitration agreement, a party must prove that (1) a material misrepresentation was made, (2) it was false, (3) when the speaker made the representation he knew it was false or made it recklessly without any knowledge of its truth and as a positive assertion, (4) the speaker made it with the intention that it should be acted upon by the party, (5) the party acted in reliance upon it, and (6) the party thereby suffered injury. *See Oakwood,* 987 S.W.2d at 571; *see also In re Delta Homes, Inc.,* 5 S.W.3d 237, 239 (Tex.App.-Tyler 1999, orig. proceeding).

 Here, Swinton again claims that an HEB representative forced him to sign the benefit agreement electing comprehen-

sive benefits (and therefore, arbitration) without giving him the opportunity to fully read the agreement. Once again, Swinton does not point to any misrepresentation made by HEB regarding arbitration. Instead, claiming there were no discussions about arbitration at orientation, Swinton apparently contends that HEB had a duty to advise him of the existence of an arbitration provision and failed to do so. *See e..g., Palm Harbor,* 944 S.W.2d at 722. Assuming HEB had such a duty, there is no proof that HEB violated its duty. *See Emerald Texas,* 920 S.W.2d at 403 ("a failure to disclose information is not fraudulent unless one has an affirmative duty to disclose, such as where a confidential or fiduciary relationship exists"). As we have observed, there is no proof that HEB misled Swinton about arbitration or that Swinton was unaware of the existence of the arbitration provision when he signed the benefit agreement. Given that Swinton is presumed to know the contents of a document he signed, and in view of the conspicuous notice of the agreement to arbitrate provided in the benefit agreement, we hold that the trial court could only have reached one conclusion; that Swinton knowingly agreed to arbitration. *See Cantella,* 924 S.W.2d at 944 (rejecting City's claim that it did not know about arbitration provision in light of agreement's conspicuous notice of arbitration and legal presumption that a party knows the contents of an agreement it signs).

### F. Void as against Public Policy

Finally, Swinton argues that the benefit agreement is void as against public policy because the HEB Plan not only provides substantially less benefits than the TWCA, but also relegates all disputes to arbitration. Before addressing these issues, we address Swinton's contention that an employee's waiver of the right to sue a non-

subscribing employer alone violates public policy. In support of this contention, Swinton cites *Texas Health Enterprises v. Kirkgard,* 882 S.W.2d 630 (Tex.App.-Beaumont 1994, writ denied). In *Kirkgard,* two employees sued their non-subscriber employer for wrongful termination after they were fired for refusing to sign a waiver of their rights to benefits under the TWCA and to sue at common law. *See* 882 S.W.2d at 632. In affirming a judgment in favor of the employees, the court found that the waiver violated provisions of the TWCA prohibiting waiver of compensation. *See id.* at 633 (citing TEX. LAB.CODE ANN. § 406.035 (Vernon 1996)).[9] In also rejecting a complaint about a jury instruction, the court stated that "an employment agreement limiting a non-subscribing employer's liability for job-related injuries is void as against public policy." *See id.* at 634 (citing *Hazelwood v. Mandrell Indus.,* 596 S.W.2d 204 (Tex.Civ.App.-Houston [1st Dist. ] writ ref'd n.r.e.)).

Seizing on this statement, Swinton argues the benefit agreement violates public policy because it limits his common law right to sue HEB for job-related injuries, but allows HEB to retain its common law defenses. *Kirkgard* is not controlling. In *Kirkgard,* the court was not addressing an employment agreement and thus, its statement was merely dictum. Similarly, here, we are not analyzing an employment agreement. Section 5 of the benefit agreement states in part: "This Agreement is not, and shall not be construed to be, an employment agreement or a contract of employment. Likewise, page 26 of the SPD states that "[t]he Plan is not to be considered an employment contract between you and the Company." Thus, we decline to adopt the *Kirkgard* court's dictum on waiver. As observed in *Brito v.*

9. Section 406.035 states "that an agreement by an employee to waive the employee's right to compensation is void." TEX. LAB.CODE ANN. § 406.035. In a case involving a post-injury waiver of an employee's common law right to

sue, the Amarillo Court held that this provision does not apply to employees of nonsubscribers. *See Martinez v. IBP, Inc.,* 961 S.W.2d 678, 682–84 (Tex.App.-Amarillo 1998, writ denied).

*Intex Aviation Services, Inc.,* 879 F.Supp. 650, 654 (N.D.Tex.1995):

> The distinction between an employment contract that requires a prospective employee, as a condition to receipt or retention of employment, to agree to limit the employer's liability, on one hand, and a voluntary occupational insurance plan, in which the employee has the option to enroll in consideration for agreeing that such constitutes the exclusive remedy for job related injuries, on the other, is decisive.

In addition, unlike the employees in *Kirkgard,* Swinton does not assert a claim for wrongful termination. Although Swinton claims the benefit agreement was procured in an unconscionable or fraudulent manner, the unambiguous terms of the benefit agreement indicate otherwise. Finally, the Amarillo Court of Appeals has recognized that an employee's pre-injury waiver of the right to sue under a nonsubscriber's voluntary benefit plan does not violate any public policy in the TWCA. *See Lawrence v. CDB Services, Inc.,* 16 S.W.3d 35, 38–39, 41–45 (Tex.App.-Amarillo 2000); *see also Lambert v. Affiliated Foods, Inc.,* 20 S.W.3d 1, 2–7 n. 1 (Tex.App.-Amarillo 1999, pet. filed) (adopting *Lawrence* and holding that judicial voiding of an employee's waiver of the right sue on public policy grounds violates the doctrine of separation of powers).

In *Hazelwood,* the case cited in *Kirkgard,* the court held that an employment agreement that limited the employee's benefits to those measured by the TWCA, but allowed the non-subscribing employer to retain its common law defenses violated public policy. *See* 596 S.W.2d at 205–06. Thus, because the employer retained the right to assert common law defenses to any claim for benefits under the employment agreement, there was no *quid pro quo* for the employee's waiver under that agreement. Those circumstances are not present here. Under the benefit agreement, Swinton could have opted for less benefits under basic coverage and retained the right to sue HEB. Had Swinton made that choice, HEB would have waived its right to common law defenses. *See* Tex. Lab.Code Ann. § 406.033(a). Swinton, however, freely chose to waive his right to sue HEB in return for greater benefits under comprehensive coverage. By making that choice, Swinton was not only entitled to greater benefits without proof of fault, but also free to arbitrate "any and all disputes, claims and/or controversies" relating to the benefit agreement, the Plan, or occupational injury. Thus, unlike the employer-skewed employment agreement in *Hazelwood,* the benefit agreement did not require Swinton to unfairly relinquish substantive rights. Accordingly, we cannot agree that merely waiving his *common law* right to sue HEB renders the benefit agreement void as against public policy especially where, as here, such waiver is accompanied by the granting of the right to arbitrate disputes.

▪ Swinton responds that even if waiver of the right to sue under the benefit agreement does not alone violate public policy, the fact that the agreement offers benefits that are substantially less than those available under the TWCA, together with the waiver, does violate public policy. *See Reyes v. Storage & Processors, Inc.,* 995 S.W.2d at 722, 726–29 (Tex.App.-San Antonio 1999, pet. denied). In *Reyes,* the employee executed an agreement enrolling him in the nonsubscriber employer's welfare benefit plan. *See id.* Like the benefit agreement here, the agreement in *Reyes* conspicuously provided that the employee waived his common law rights for any work-related injury in return for only those benefits provided by the plan. *See id.* After he was injured on the job, the employee accepted benefits under the plan, but then sued the employer for negligence. *See id.* The trial court granted summary judgment in the employer's favor. *See id.* at 724–25.

The court of appeals recognized that "voluntary workers' compensation is purely a matter of contract," but stated that such contracts are valid only when the nonsubscriber's plan provides benefits that are "measured by the terms of the TWCA" or benefits that are "equal to or greater than those provided by the TWCA." *See id.* at 727–29. The court therefore reversed the summary judgment after concluding that the enrollment agreement was void as against public policy because the benefits paid under the plan were far more limited than those provided by the TWCA. *See id.* at 729. The court explained:

> ... public policy does not permit an employer to reap the principal benefit of providing workers' compensation coverage—the waiver of an injured employee's common law and statutory claims—without also bestowing on the injured employee the principal benefit for which that waiver is the "quid pro quo"—the limited but certain benefits guaranteed by workers' compensation insurance coverage. If the balance between the extent of the waiver and the receipt of benefits is tipped so that the employee's benefit under the statute are substantially reduced, the clear intent of the Legislature is thwarted.

*See id.* at 727–28.

HEB responds that *Reyes* conflicts with *Lawrence* and that *Lawrence* controls. We disagree. Both *Reyes* and *Lawrence* recognize the validity of an employee's pre-injury, contractual waiver of the right to sue under a nonsubscriber's voluntary benefit plan. *Reyes*, however, limits the validity of such a waiver to a narrow set of circumstances: when the *quid pro quo* for the waiver are benefits that are "measured by the terms of the TWCA" or benefits that are "equal to or greater than those provided by the TWCA." *See Lawrence*, 16 S.W.3d at 40; *see also Reyes*, 995 S.W.2d at 726–29. Although there are no such limits expressly stated in the TWCA, *Lawrence* does not disagree with *Reyes* on this point. Rather, the *Lawrence* court did not conduct a comparison of benefits simply because that issue was not preserved for appellate review. *See* 16 S.W.3d at 44–45. Here, Swinton complains that the HEB Plan violates public policy because the Plan, like the plan in *Reyes*, provides "significantly less" benefits than the TWCA. Swinton contends the evidence he submitted to the trial court makes it clear that benefits provided by the HEB Plan are far more limited than those provided by the TWCA, thus putting the Plan in violation of public policy. We disagree and instead find that the HEB Plan compares favorably to the TWCA in many respects. *See generally Texas Workers' Compensation Comm'n v. Garcia*, 893 S.W.2d 504, 513–14 (Tex.1995) (summarizing benefits under the TWCA).

First, the TWCA provides impairment income benefits equal to 70% of the employee's average weekly wage from the date of maximum medical improvement until the earlier of, (1) the expiration of a period computed at the rate of three weeks for every percentage point of impairment, or (2) the date of the employee's death. *See* Tex. Lab.Code Ann. §§ 408.121(a), 408.126 (Vernon 1996). While the HEB Plan does not provide impairment benefits, it provides 100% medical benefits up to $2 million. Second, the TWCA provides wage replacement benefits equal to 70% of the difference between the employee's average weekly wage and the employee's average weekly wage after the injury, from the date of disability until the "date of maximum medical improvement," for a maximum of two years. *See id.* at §§ 408.101–408.103, 401.011(30). The TWCA also provides supplemental income benefits at the end of the impairment period and up to 401 weeks after the date of injury, if the employee has an impairment rating of 15% or more and is earning less than 80% of his or her average weekly wage. *See id.* at §§ 408.083, 408.143–408.146. These benefits are calculated quarterly and are paid at the weekly rate of 80% of the difference

between 80% of the employee's preinjury average weekly wage and the weekly wage earned during the quarterly reporting period. *See id.* at § 408.144. Without regard to impairment, the HEB Plan likewise provides wage replacement benefits equal to 100% of the employee's average weekly wage for up to ten years following the fifth day of disability.[10] Third, the TWCA provides lifetime benefits equal to 75% of the employee's average weekly wage for specified severe injuries. *See id.* at § 408.161. The HEB Plan does not pay lifetime benefits for severe injury, but pays $150,000 over ten years in addition to the 100% wage replacement benefit payable during the same period.

Fourth, the TWCA provides death benefits equal to 75% of the employee's average wage and payable to the employee's legal beneficiaries for their lifetime or until the occurrence of specified contingencies. *See id.* §§ 408.181–408.184. While the HEB Plan does not pay lifetime death benefits, it pays $15,000 per year for ten years to the employee's spouse or any person named as a beneficiary. Fifth, the TWCA pays for the cost of burial based on the lesser of, (1) the actual costs incurred for reasonable burial expenses, or (2) $2,500. The HEB Plan pays actual burial expenses up to $5,000. Finally, the TWCA does not preclude the recovery of exemplary damages for an employee's death caused by an intentional act or the gross negligence of the employer. *See id.* at 408.001. The HEB Plan requires employees to release HEB of all claims for work-related injury, death or disease, provided that the employee opts for comprehensive coverage under the Plan. However, employees can retain the right to sue HEB, provided they opt for basic coverage.[11]

In sum, while the HEB Plan does not provide for impairment benefits or lifetime benefits for lost wages, death or disability,

it provides 100% medical and wage benefits and extended wage, death, and disability benefits. Furthermore, unlike the enrollment agreement in *Reyes*, the benefit agreement allows employees to retain the right to sue in return for less benefits under the HEB Plan. Thus, under the HEB Plan, employees may decline comprehensive coverage and arbitration, and retain the right to sue. However, if they do not make that election, the benefits available to employees under HEB's comprehensive coverage are not substantially less than the benefits otherwise available under the TWCA. Accordingly, even under the *Reyes* analysis, we cannot say the "balance" between "the extent of waiver and the receipt of benefits" under the HEB Plan is so tipped in favor of HEB as to violate any public policy expressed by the TWCA. *See Reyes*, 995 S.W.2d at 729.

Swinton responds that even if HEB's Plan is comparable to the TWCA, the fact that the Plan also provides for arbitration of all disputes *unfairly* "tips the balance between waiver and benefits" in HEB's favor. In support of this assertion, Swinton relies on *Strawn*. As we previously described, the employee in *Strawn* signed an agreement requiring her to submit "all claims and disputes for bodily injury" to arbitration in return for a heightened level of benefits under the employer's benefit plan. 70 F.Supp.2d at 719. The federal district court declared the agreement void as against public policy not only because the plan offered "minimal benefits," but also because the agreement unilaterally imposed an arbitral forum on its injured employees. *See id.* at 725–26 The court concluded that an arbitral forum "is sufficiently dissimilar to a judicial forum as to undermine Texas public policy with respect to the workers compensation system." *See id.*

---

**10.** "Impairment" refers to the extent of permanent injury without regard to the effect on employment while "disability" refers to decreased wage earning ability.

**11.** Under basic coverage, an employee is eligible for 90% of medical benefits up to $750,000 for treatment by the Plan's network providers, and no other benefits.

One month later, however, the same federal district court refused to apply *Strawn* to strike down HEB's benefit agreement. *See Cline*, 79 F.Supp.2d at 735. In *Cline*, the court found that, unlike the waiver and arbitration provisions in *Strawn*, HEB's Plan is "entirely voluntary" and that "there [wa]s no showing that the benefits available to an HEB employee under the [Plan] are so inferior to that which would be otherwise available under the Workers' s Compensation system as to implicate the public policy concerns which motivated the court in *Strawn*." As we discussed, there is no proof that Swinton's election of benefits under the HEB was anything but voluntary nor is there any showing that those benefits are substantially less than the benefits available under the TWCA. Accordingly, we hold that the benefit agreement does not violate public policy.[12]

## F. Other Defenses

There are other defenses that Swinton raised in the trial court but chose not to address in response to the petition for writ of mandamus. We now briefly address each of these defenses.

### 1. Collateral Estoppel

 Swinton first argued that HEB is collaterally estopped from seeking arbitration because motions to compel arbitration based on the same benefit agreement were denied in two other lawsuits. Collateral estoppel is issue preclusion. *See Barr v. Resolution Trust Corp.*, 837 S.W.2d 627, 629 (Tex.1992). It prevents a party from relitigating an issue that it previously litigated and lost. *See Quinney Elec., Inc. v. Kondos Entertainment, Inc.*, 988 S.W.2d 212, 213 (Tex.1999) (per curiam). Application of collateral estoppel is a question of law for the court. *See Hill v. Heritage Resources, Inc.*, 964 S.W.2d 89, 138 (Tex. App.-El Paso 1997, writ denied). The ele-

ments of collateral estoppel are: (1) facts sought to be litigated in the second action were fully and fairly litigated in the prior action; (2) those facts were essential to the judgment in the first action; and (3) the parties were cast as adversaries in the first action. *See Sysco Food Services, Inc. v. Trapnell*, 890 S.W.2d 796, 801 (Tex. 1994). Collateral estoppel is an affirmative defense and as such, the party asserting it has the burden of pleading and proving its elements. *See Hill*, 964 S.W.2d at 137.

 In support of his collateral estoppel argument, Swinton offered documents from the two other lawsuits, including the motions to compel, a response to one of the motions, the court orders denying arbitration, and HEB's notice of appeal and motion to dismiss related to an appeal from one of the orders. While some of the defenses raised in response to one motion to compel arbitration are similar (but not identical) to some of Swinton's defenses, neither court order specifies the grounds for denying arbitration. Collateral estoppel requires that the issue decided in the first action be identical to the issue decided in the pending action. *See Getty Oil v. Insurance Co. of N. Am.*, 845 S.W.2d 794, 802 (Tex.1992). Here, Swinton simply has not shown that the issues sought to be litigated in the underlying case were fully and fairly litigated in the prior lawsuits.

### 2. Labor Code Bars Arbitration

 Swinton also argued that HEB could not assert arbitration as an affirmative defense to the underlying personal injury suit because non-subscribers are prohibited from asserting certain common law defenses. *See* Tex. Lab.Code Ann. § 406.033(a). This argument fails for several reasons. First, the parties executed the benefit agreement, including the

---

12. We note that HEB also asserted, and demonstrated by affidavit, that Swinton ratified the benefit agreement by accepting benefits under the Plan. *See Reyes*, 995 S.W.2d at 725–26. Having determined that the benefit agreement is not void on illegality or public policy grounds, we conclude that "ratification" is a further basis supporting arbitration under an otherwise enforceable benefit agreement. *See id.*

agreement to arbitrate, pursuant to the FAA, not Texas statutory or common law. Second, even if the agreement to arbitrate were governed by Texas law, section 406.033(a) does not preclude arbitration. When parties have expressly provided for arbitration in their contract, the FAA preempts state statutes to the extent they are inconsistent with the FAA's policy favoring arbitration *See Jack B. Anglin Co. v. Tipps,* 842 S.W.2d 266, 271 (Tex.1992) (citing *Volt Information Sciences v. Board of Trustees,* 489 U.S. 468, 474, 109 S.Ct. 1248, 1253, 103 L.Ed.2d 488 (1989)). Finally, arbitration is not one of the prohibited common law defenses in section 406.033(a).

### 3. Express Negligence Doctrine

 Swinton next argued that the benefit agreement violates the express negligence rule. Under the express negligence doctrine, a party who wishes to contractually shift risk from itself for the consequences of its future negligence, must specifically express that intent within the four corners of an agreement. *See Lawrence,* 16 S.W.3d at 41–43 (citing *Ethyl Corp. v. Daniel Constr., Co.,* 725 S.W.2d 705, 707–8 (Tex.1987); *see also Dresser Indus., Inc. v. Page Petroleum, Inc.,* 853 S.W.2d 505, 508 (Tex.1993). The express negligence doctrine is inapplicable here because neither the benefit agreement nor the arbitration agreement contained therein attempts to relieve HEB of the consequences of its negligence. To the contrary, Swinton's "waiver" and "release" obligated HEB to pay plan benefits, regardless of its negligence. Further, it did not deprive Swinton of his right to bring claims against HEB, but limited the forum in which to assert those claims.

 Even if the express negligence doctrine applies, the benefit agreement does not violate it. A clause shifting the risk for a party's own future negligence is required to be conspicuously written, so that a reasonable person against whom it is to operate should notice it. *See Law-*

*rence,* 16 S.W.3d at 44–45. A clause is conspicuous if it has language in capital headings, or has language in contrasting type or color. *See id.; see also* Tex. Bus. & Com.Code Ann. § 1.201(10) (Vernon ). As set forth above, the notice advising Swinton of the arbitration restriction and the waiver of his right to sue in exchange for plan benefits is in capital letters and underlined. This meets the requirements of conspicuousness.

### 4. Ambiguity

 Lastly, Swinton argued that the benefit agreement is ambiguous because one provision in the SPD refers to giving up the right to sue in federal court while other provisions addressing the waiver issue in the SPD and benefit agreement make no reference to federal or state court. Swinton therefore argued that this ambiguity should be construed against HEB and that the benefit agreement should be read to prohibit only suits in federal court. Whether a contract is ambiguous is a question of law that must be decided by examining the contract as a whole in light of the circumstances present when the contract was entered. *See Columbia Gas Transmission Corp. v. New Ulm Gas, Ltd.,* 940 S.W.2d 587, 589 (Tex. 1996). A contract is not ambiguous if it can be given a definite or certain meaning as a matter of law. *See id.* The SPD provision referred to by Swinton is in the section addressing ERISA claims, which may only be brought in federal court. *See Metropolitan Life Ins. Co. v. Taylor,* 481 U.S. 58, 62–63, 107 S.Ct. 1542, 1546, 95 L.Ed.2d 55 (1987). Thus, this provision is not inconsistent with the other provisions in the SPD and benefit agreement addressing the waiver of any work-related injury claims. We therefore hold, as a matter of law, that the benefit agreement is not ambiguous.

Accordingly, we conditionally grant the writ of mandamus and direct the trial court to vacate its order denying HEB's motion to compel arbitration. Because we are confident the trial court will comply,

the writ will issue only if the court fails to do so.