Gary **QUINN**, Plaintiff,

v.

**EMC CORP.,** Defendant.

**No. Civ.A. G-00-178.**

United States District Court,
S.D. Texas,
Galveston Division.

Aug. 21, 2000.

---

Gary J Siller, Griggs & Harrison, Houston, TX, for Gary Quinn, plaintiff.

Deke Wayne Bond, Brobeck Phleger et al., Austin, TX, for EMC Corporation, defendant.

## ORDER GRANTING DEFENDANT'S MOTION TO STAY

KENT, District Judge.

Plaintiff Quinn brings suit against his former employer, Defendant EMC Corp., alleging causes of action under the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq.* ("ADEA") pursuant to the provisions of Title VII of the Civil Rights Act of 1964; 42 U.S.C. § 1981(a), 29 U.S.C. § 794; the Americans with Disabilities Act of 1990, 42 U.S.C. §§ 12101–12213 ("ADA"); the Family and Medical Leave Act of 1993, 29 U.S.C. §§ 2601–2654 ("FMLA"); the Texas Commission on Human Rights Act. He also brings a state law claim for intentional infliction of emotional distress ("IIED"). Now before the Court is Defendant's Motion to Dismiss, or in the Alternative, to Stay Proceedings and Compel Arbitration. For the reasons set forth below, Defendant EMC's Motion to Stay is **GRANTED.**

### I. FACTUAL SUMMARY

Defendant EMC hired Plaintiff Gary Quinn on January 5, 1998 as a Business Development Manager ("BDM"). One week after beginning work, Plaintiff signed a Key Employment Agreement ("Agreement"), which contained, *inter alia,* the following arbitration provision:

> You agree that binding arbitration shall be the sole and exclusive remedy for resolving any dispute arising out of or relating to your employment by the Company or any alleged discrimination by the Company; *provided, however,* that this shall in no way limit the Company's ability to commence litigation with regard to any breach of this Agreement.

*Def.'s Mot. to Dismiss Ex. A at 3.*

On August 10, 1999, Defendant EMC terminated Plaintiff. Upset, Plaintiff filed suit in federal court, claiming that he had been the victim of discrimination. In response, Defendant EMC now seeks to steer all of Plaintiff's claims into binding

arbitration pursuant to the terms of the Agreement.

## II. ANALYSIS

At the outset, the Court observes that there is a strong federal policy favoring the arbitration process. *See Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 25, 111 S.Ct. 1647, 1651, 114 L.Ed.2d 26 (1991) (noting that the Federal Arbitration Act manifests a liberal federal policy favoring arbitration agreements); *Shearson/American Express, Inc. v. McMahon*, 482 U.S. 220, 225, 107 S.Ct. 2332, 2337, 96 L.Ed.2d 185 (1987) (observing that there is a strong national policy encouraging the use of arbitration); *Life of America Ins. Co. v. Aetna Life Ins. Co.*, 744 F.2d 409, 412–13 (5th Cir.1984); *see also Eljer Mfg., Inc. v. Kowin Dev. Corp.*, 14 F.3d 1250, 1254 (7th Cir.1994) (defining arbitration as "a private system of justice offering benefits of reduced delay and expense").

The Federal Arbitration Act, 9 U.S.C. § 3, "mandates that when an issue is referable to arbitration pursuant to a written agreement, the district court must stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant is not in default in proceeding with such arbitration." *Williams v. Cigna Financial Advisors, Inc.*, 56 F.3d 656, 659 (5th Cir. 1995). Thus, in deciding whether the grant Defendant's Motion to Stay Proceedings and Compel Arbitration, the Court need only decide if the dispute is covered by the terms of a valid arbitration agreement; if so, a stay must be granted. *See id.*

■ When confronted with the question of arbitrability, a District Court must determine, as a threshold matter, whether the grievance before it is subject to arbitration. See *Folse v. Richard Wolf Med. Instruments Corp.*, 56 F.3d 603, 605 (5th Cir.1995); *Oil, Chem. & Atomic Workers Int'l Union, Local 4–227, AFL—CIO v. Phillips 66 Co.*, 976 F.2d 277, 278 (5th Cir.1992). This determination involves two inquiries. First, the Court asks whether there is a valid agreement to arbitrate; if so, the Court then asks whether the issue in question is covered by the valid agreement. *See Webb v. Investacorp, Inc.*, 89 F.3d 252, 257–58 (5th Cir.1996). As to the first inquiry, the Court finds that the arbitration provision in the Agreement is valid, because it is a contractual provision supported by consideration and there are no equitable reasons to invalidate this private contractual agreement to arbitrate. Plaintiff's arguments to the contrary are examined below.

### A. *Did Defendant EMC Offer an Illusory Promise?*

■ Plaintiff first argues that the arbitration agreement is invalid for want of consideration. Focusing on that portion of the Agreement permitting Defendant EMC to avoid binding arbitration, Plaintiff complains that Defendant EMC made an illusory promise to him, which renders the arbitration provision void for lack of consideration. The Court disagrees. The Agreement does not provide Defendant EMC with *carte blanche* power to disregard the arbitration clause and file suit for any reason; instead, Defendant EMC may only "commence litigation with regard to any breach of this Agreement." *Def.'s Mot. to Dismiss Ex. A at 3.* This simply means that if Plaintiff chooses to file suit rather than abide by the terms of the Agreement (which, is what in fact has happened in this case) or if he elects to improperly release, steal, or abscond with Defendant EMC's proprietary information and trade secrets, then Defendant EMC reserves the right, under these extremely limited circumstances, to enforce the Agreement by pursuing appropriate remedies in court (likely to be taken in form of injunctive relief). Hence, the Court finds that mutuality of obligation exists, because under the express terms of the arbitration provision both Defendant EMC and Plaintiff must submit to arbitration all claims "arising out of or relating to termination of [Plaintiff's] employment by [Defendant EMC] or any

alleged discrimination by [Defendant EMC]." Put more succinctly, the Agreement requires Defendant EMC to be bound by the arbitrator's ruling, which Defendant EMC acknowledges. *See Def.'s Reply to Pl.'s Resp. to Def.'s Mot. to Dismiss or, in the Alternative, to Stay and Compel Arbitration at 3 & n. 3* (agreeing to binding arbitration on all issues regarding employment termination and discrimination).

In addition to mutuality of obligation, other valid consideration exists to support the arbitration provision. *Cf., Cline v. H.E. Butt Grocery Co.,* 79 F.Supp.2d 730, 732 (S.D.Tex.1999) (noting that consideration other than mutual promises may support the validity of an arbitration clause). In exchange for Plaintiff relinquishing his legal right to have a judicial forum adjudicate any employment-related dispute, Defendant EMC promised to hire Plaintiff and provide him access to the company's confidential information and trade secrets. Thus, while Defendant EMC and Plaintiff are mutually obligated to arbitrate any employment termination or discrimination claims, Defendant EMC has—in response to making available to Plaintiff sensitive company trade secrets—carved out a discrete area in which it is not required to arbitrate. It is essential, however, to remember that Defendant EMC offered valid consideration for this limited right to protect the integrity of its proprietary information and trade secrets. *See Harris v. Green Tree Fin. Corp.,* 183 F.3d 173, 180 (3d Cir.1999) ("[S]ubstantive federal law stands for the proposition that parties to an arbitration agreement need not equally bind each other with respect to an arbitration agreement if they have provided each other with consideration beyond the promise to arbitrate."); *Lawrence v. Compre-*

*hensive Bus. Servs. Co.,* 833 F.2d 1159, 1162–64 (5th Cir.1987) (holding that an arbitration clause was not unconscionable for lack of mutuality of obligation, despite the existence, *inter alia,* of a provision which allowed one party to seek judicial injunction in the case of breach); *In re Alamo Lumber Co.,* 23 S.W.3d 577, 579 (Tex.App.—San Antonio 2000, pet. filed) (not released for publication) (finding that mutual promises to arbitrate constitute valid consideration under Texas law when the arbitration agreement allows the employer, but not the employee, to seek judicial remedies for injunctive or equitable relief); *see also Barker v. Golf U.S.A., Inc.,* 154 F.3d 788, 792 (8th Cir.1998) (concluding that "under Oklahoma law, mutuality of obligation is not required for arbitration clauses so long as the contract as a whole is supported by consideration"), *cert. denied,* 525 U.S. 1068, 119 S.Ct. 796, 142 L.Ed.2d 659 (1999); *Pridgen v. Green Tree Fin. Serv. Corp.,* 88 F.Supp.2d 655, 659 (S.D.Miss.2000) (stating that under Mississippi law mutuality of obligation is not required for an arbitration provision to be valid if the underlying agreement is supported by consideration). Consequently, the basis for the bargain turns on Plaintiff's access to confidential information, which Defendant EMC permitted in return for the right to protect company trade secrets in court. There is simply no illusory promise.[1]

The Agreement does not, as Plaintiff suggests, provide Defendant EMC with an unfair windfall that works to the detriment of Plaintiff; in fact, the Agreement forces Defendant EMC not only to arbitrate the very same types of claims now alleged in this case, but also to make confidential data available to Plaintiff.[2] The Court fur-

---

**1.** To the extent that Plaintiff may claim that the Agreement is invalid, the Court directs the parties to consult with the arbitrator. *See Rojas v. TK Communications, Inc.,* 87 F.3d 745, 749 (5th Cir.1996) (directing the plaintiff to pursue his unconscionability claim with the arbitrator); *Gutierrez v. Academy Corp.,* 967

F.Supp. 945, 947 (S.D.Tex.1997) ("[I]f a plaintiff's complaints regarding the enforceability of a clause relate to the entire contract, they must be decided by an arbitrator.").

**2.** Plaintiff devotes much attention to the Court's recent decision in *Strawn v. AFC Enterprises, Inc.,* 70 F.Supp.2d 717 (S.D.Tex.

ther finds that by acceding to binding arbitration in its Motion briefings, Defendant EMC has satisfied the consideration requirement. *See, e.g., Michalski v. Circuit City Stores, Inc.,* 177 F.3d 634, 636–37 (7th Cir.1999) (recognizing that a "promise [by the employer] to be bound by the arbitration process itself serves as mutual consideration here"); *Johnson v. Circuit City Stores,* 148 F.3d 373, 379 (4th Cir.1998); *Wright v. Circuit City Stores, Inc.,* 82 F.Supp.2d 1279, 1284 (N.D.Ala.2000) (both holding that an agreement made by the employer to pursue the arbitration proceeding is adequate consideration). Ultimately, the Court concludes that mutuality of obligation exists and that the narrow right-to-sue clause granted to Defendant EMC under the arbitration clause is supported by valid consideration.

## B. *Unconscionability of Fees*

■ Plaintiff next contends that the arbitration agreement is unconscionable because it requires him to pay one half of the arbitration fees, yet he fails to cite any binding authority for this proposition. Fortunately, the Fifth Circuit recently addressed this issue, concluding that the mere possibility that a plaintiff may have to share in the payment of the arbitrator's fees, without more, is not a sufficient reason to invalidate the arbitration agreement. *See Williams v. Cigna Financial Advisors, Inc.,* 197 F.3d 752, 764 (5th Cir. 1999), *cert. denied,* —— U.S. ——, 120 S.Ct. 1833, 146 L.Ed.2d 777 (2000); *see also Rosenberg v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 170 F.3d 1, 16 (1st Cir.1999) ("Arbitration is often far more affordable to plaintiffs and defendants alike than is pursuing a claim in court."); *Koveleskie v. SBC Capital Mkts., Inc.,* 167 F.3d 361, 366 (7th Cir.), *cert. denied,* —— U.S. ——, 120 S.Ct. 44, 145 L.Ed.2d 40 (1999); *Arakawa v. Japan Network Group,* 56 F.Supp.2d 349, 354 (S.D.N.Y.1999) (determining that the mere fact that a plaintiff faces the possibility of being charged arbitration fees, including sharing the arbitrator's compensation if directed to do so by the arbitrator, does not make the agreement to arbitrate Title VII claims unenforceable as a matter of law.). This Court has also previously rejected the claim that an arbitration provision which requires the plaintiff to share in paying arbitration fees violates public policy. *See Cline,* 79 F.Supp.2d at 733.

The Agreement at issue in this case expressly allows the arbitrator to award reasonable fees if the employee prevails on such a statutory claim. Thus, at this point it is not clear how much Plaintiff must pay, or whether he will have to pay anything at all. Although Plaintiff offers his affidavit as proof of his financial inability to pay for the cost of arbitration, the Court notes that Plaintiff has recently been hired as Development Manager at Compaq Computer Corporation, where he presumably earns a healthy salary. Without more data from Plaintiff proving his dire financial straits, the Court cannot simply assume that such a worker is incapable of paying arbitration fees (including travel costs).

■ Even if the Court were convinced that Plaintiff cannot afford to pay for the

1999), yet *Strawn* is inapposite on the facts of this case. In that case, an employee was forced, as a condition of employment, to waive her right to sue and was required to submit all claims to arbitration. In return, she received benefits that were substantially less than those which would otherwise be available to her under the Worker's Compensation Scheme. This Court held that forcing a worker to waive her right to sue in exchange for miserly benefits was contrary to the public policy of Texas by undermining the "quid pro quo" interaction by employer and employee envisioned by the Texas Legislature when it enacted the Worker's Compensation Scheme.

In contrast, this case does not involve the Worker's Compensation Scheme, nor does it implicate the same public policy concerns. Unlike the plaintiff in *Strawn,* Plaintiff Quinn is not asked to elect between coverage plans. Instead, the Agreement represents a straightforward attempt to direct all employment-related complaints to arbitration rather than to federal court. In short, *Strawn* is simply inapplicable to this factually dissimilar case.

arbitration proceeding, the better solution would be to nullify the fee provisions of the arbitration agreement and have Defendant EMC shoulder the expense. Plaintiff's proposed solution—abrogation of the entire arbitration agreement—is unnecessarily radical. *See Arakawa*, 56 F.Supp.2d at 354 ("[T]he possibility that a plaintiff may be required to pay arbitration fees is not, by itself, a sufficient reason to invalidate an agreement to arbitrate ... because the arbitral panel may not in fact require the plaintiff to pay fees and, if a plaintiff believes that excessive fees have been levied against him or her, judicial review of the imposition of the fees is available after arbitration."). The Court concludes that Plaintiff has failed to demonstrate that the arbitration provision at issue in this case is unconscionable simply because he may eventually have to pay a portion of the arbitrator's fees. *See Cline*, 79 F.Supp.2d at 733.

## C. *Does the Agreement Allow Plaintiff to Vindicate His Statutory Rights?*

Plaintiff next takes issue with the clause in the Agreement stating that "[w]ithin one (1) year from the date the Dispute arises and Employee must notify the Office of the General Counsel in writing of the existence of the Dispute ("Written Notification") or the Employee will be forever barred from bringing a claim." *Def.'s Mot. to Dismiss Ex. A at 3.* He claims that this provision imposes more stringent time bars than those authorized under federal and state law. This issue, however, is moot, as Defendant EMC acknowledges that by filing suit in federal court, Plaintiff has satisfied the written notification requirement in accordance with the terms of the Agreement. *See Def.'s Reply to Pl.'s Resp. to Def.'s Mot. to Dismiss, or in the Alternative, to Stay and Compel Arbitration at 7* ("Plaintiff already has provided EMC with the requisite notice through the filing of his Complaint in this Court."). Therefore, all of Plaintiff's claims remain ripe for resolution at arbitration. As an officer of the Court, EMC's counsel is admonished

to make good on this commitment. In the event that disputes regarding limitations issues arise, the Court **ORDERS** that any language included in the Agreement which denies Plaintiff the capacity to bring forth at the arbitral hearing any of the claims alleged in the suit now pending, the offending provision is invalidated and the parties are instructed to proceed at arbitration without the provision.

## D. *Does the Designated Location for Arbitration Render the Agreement Invalid?*

■ Plaintiff also argues that being forced to arbitrate in Massachusetts violates public policy. Noting that Plaintiff has failed to cite a single case to support his position, the Court remains unpersuaded that this factor renders the Agreement invalid, particularly in light of all the other factors that support enforcing the arbitration clause. *See Webb*, 89 F.3d at 259 (upholding an arbitration provision that called for the Texas-based plaintiff to proceed with arbitration in the county where the Florida defendant maintained its executive offices).

## E. *Does Plaintiff Prove Procedural and Substantive Unconsciousability?*

■ In the absence of more persuasive evidence, the Court does not find the Agreement procedurally unconscionable, for Plaintiff has failed to show "overreaching or sharp practices" by EMC and "ignorance or inexperience" on the part of Plaintiff. *Arkwright–Boston Mfrs. Mut. Ins. Co. v. Westinghouse Elec. Corp.*, 844 F.2d 1174, 1184 (5th Cir.1988). When EMC delivered the Agreement to Plaintiff, it enclosed a cover letter stating, *inter alia*, that the agreement "when signed by you is a binding legal agreement, so you may wish to review its terms with your legal advisor before signing it." Furtado Aff., Ex. A at 1. The letter further explains that "[i]f you have any questions, either your supervisor or your human resources representative would be happy to

discuss them with you." *Id.* This action taken on the part of EMC does not rise to the level of "overreaching or sharp practices." Additionally, Plaintiff waited more than a week after receiving the Agreement to sign it. Presumably, he had sufficient time either to review the arbitration policy and agreement, which was made available to Plaintiff over the company's intranet site, or at least to ask for an extension to secure legal advise as recommended by Defendant EMC. Nevertheless, Plaintiff, as an at-will employee, continued his employment with Defendant EMC after he received notice that the Agreement contained an arbitration policy, which indicates that Plaintiff entered into a unilateral contract to arbitrate. *See In re Alamo Lumber Co.*, 2000 WL 821671, at *4 (holding that when an at-will employee continues to work after receiving notice that the employer has an arbitration policy, a unilateral contract to arbitrate exists). Because Plaintiff failed to shoulder the burden of demonstrating procedural unconscionability, his argument is unavailing.

■ Plaintiff has likewise failed to show that the terms of the agreement were "one-sided or oppressive" so as to constitute substantive unconscionability. *Arkwright*, 844 F.2d at 1184. Plaintiff certainly failed to show that " 'no man in his senses and not under a delusion would enter into and ... no honest and fair person would accept a contract on such terms.' " *Morrison v. Amway Corp.*, 49 F.Supp.2d 529, 534 (S.D.Tex.1998) (*quoting Lindemann v. Eli Lilly and Co.*, 816 F.2d 199, 204 (5th Cir.1987)). As the Court has detailed above, under the terms of the Agreement both parties are bound by the ruling of the arbitrator over all employment issues other than a select few relating to the release of proprietary information or trade secrets. Because consideration was given in return for these discrete exceptions, the Court finds that the agreement is not "oppressive." The claim of substantive unconscionability is rejected.

## F. *Are Plaintiff's Claims Within the Scope of the Arbitration Agreement?*

Having concluded that Plaintiff has failed in his attempt to demonstrate that the arbitration provision is invalid, the Court must now refer to arbitration those claims covered by the arbitration provision. *See Webb*, 89 F.3d at 257–58. The Agreement provides that "any dispute arising out of or relating to [Plaintiff's] employment by the Company, including, but not limited to [Plaintiff's] compensation, or any alleged discrimination or termination of [Plaintiff's] employment." The terms of the Agreement clearly embrace all claims brought under federal and state statutes. And even with regard to the state common law cause of action for IIED, it too "arises out of" Plaintiff's employment and termination of employment. Because all claims are covered by the arbitration provision, they are properly referable to an arbitral forum. *See Wick v. Atlantic Marine, Inc.*, 605 F.2d 166 (5th Cir.1979) ("Unless it can be said with positive assurance that an arbitration clause is not susceptible of an interpretation which would cover the dispute at issue, then a stay pending arbitration should be granted."); *see, also e.g.*, *Rojas*, 87 F.3d at 749 (concluding that the language "any other disputes" contained in the arbitration clause was "sufficiently broad to encompass" Title VII claims); *Cooper v. Citigroup, Inc.*, No. CIV.A.3:99–CV–1471–G, 1999 WL 1007664, at *2 (N.D.Tex. Nov.5, 1999) (finding that the plaintiff's Section 1981 and IIED claims fell "squarely" within the scope of an arbitration agreement similar to the one at issue in this case). Consequently, Defendant's Motion to Stay Proceedings and Compel Arbitration is **GRANTED.**

## IV. CONCLUSION

For the reasons set forth above, Defendant's Motion to Stay Proceedings and Compel Arbitration is **GRANTED.** Therefore it is **ORDERED** that Plaintiff must arbitrate all claims. Because these pro-

ceedings are **STAYED** pending completion of arbitration, the Court declines to reach the merits of Defendant's Rule 12(b)(6) Motion to Dismiss Plaintiff's FMLA claim. The parties are **ORDERED** to file no further pleadings on this issue. Once the arbitration process has been completed, the parties will be free to file a motion with the Court seeking enforcement of the arbitrator's decision. After the Court has ruled on any such motion, the parties will then be instructed to seek any further relief to which they feel themselves entitled in the United States Court of Appeals for the Fifth Circuit, as may be appropriate in due course. The parties are further **ORDERED** to bear their own taxable costs and expenses incurred herein to date.

**IT IS SO ORDERED.**