Kenneth R. **GILL**

v.

**JIM WALTER HOMES OF LA., INC., et al.**

No. CIV.A.01–2479.

United States District Court,
W.D. Louisiana.
Alexandria Division.

Jan. 31, 2002.

Fred A Pharis, Pharis & Pharis, Alexandria, LA, for Kenneth R Gill, plaintiff.

Robert W Tillery, Hammond, LA, for Jim Walter Homes of Louisiana Inc, Mid–State Homes Inc, Jim Walter Homes Inc fka Jim Walter Homes of Louisiana Inc, defendants.

### *MEMORANDUM RULING*

LITTLE, Chief Judge.

Before this Court is defendant Jim Walter Homes of Louisiana, Inc.'s ("JWH") opposed motion to dismiss [Doc. No. 6] plaintiff Kenneth R. Gill's ("Gill") complaint for failure to state a claim upon which relief can be granted. JWH relies on Rule 12(b)(6) of the Federal Rule of Civil Procedure ("FRCP") for relief. In the alternative, JWH moves this court to stay proceedings and compel Gill to arbitrate the dispute pursuant to the Federal Arbitration Act (the "FAA"), 9 U.S.C. § 1, *et seq.* After reviewing the pleadings, memorandum, replies, and arguments of both parties, this court GRANTS defendant's Motion to Stay Proceedings and Compel Arbitration under the FAA.

### I. PROCEDURAL AND FACTUAL BACKGROUND

On or about 18 October 2001, Gill filed a complaint against JWH and Mid–State Homes, Inc., in the Thirty-fifth Judicial District Court, Parish of Grant, State of Louisiana. The complaint alleged various breach of contract claims, which stemmed from plaintiff's purchase of a home from JWH, and JWH's subsequent alleged, defective construction of the property. Thereafter, on 29 November 2001, defendants properly removed the action to this court pursuant 28 U.S.C. §§ 1441 & 1446

because plaintiff's allegations implicated a federal question.

Gill entered into a sales and construction contract with JWH to purchase a custom built, "Foxborough" model home on 19 October 1998. During the process of reviewing and signing the construction contract, Gill initialed paragraph nine (9) of the contract, which stated, in pertinent part,

> This instrument and other instruments signed ... IN CONNECTION WITH THE FORGOING, BUYER ACKNOWLEDGES HAVING READ, UNDERSTOOD AND ACCEPTED THE ARBITRATION AGREEMENT SET FORTH IN EXHIBIT D ATTACHED HERETO AND INCORPORATED BY THIS REFERENCE.

After initialing paragraph 9, Gill contemporaneously signed and printed his name to Exhibit D, entitled "Arbitration Agreement" on 19 October 1998. JWH placed the arbitration agreement (the "Agreement") on a separate page, in clearly legible, standard sized font. The Agreement stated in part, the following:

> The parties agree that, at the election of either party, any controversy or claim arising out of or relating to this contract, or the breach thereof, whether asserted as in tort or contract, or as a federal or state statutory claim, arising before, during or after performance of this contract, shall be settled by binding arbitration in accordance with the Comprehensive Arbitration Rules and Procedures administered by J.A.M.S./Endispute, and judgment upon the award rendered by the arbitrator may be entered in any Court having jurisdiction thereof.

Subsequent to signing the above referenced sales contract and Agreement, the parties agreed to home construction changes, which required the parties to execute a new set of construction documents, including a fresh sales contract and arbitration agreement. As a result, on 25 November 1998, Gill and JWH executed an entirely brand-new set of closing documents. Once again, Gill initialed paragraph nine (9) of the contract referencing the Agreement and then signed and printed his name to a new Agreement, which mirrored the Agreement Gill signed on 19 October 1998.

Upon completion of the home, Gill discovered a number of alleged, hidden, construction defects, including, among others, the following: (1) the home being out-of-level; (2) cabinets that leaned to one side; (3) the four corners of the home being in different elevations; and (4) JWH built the home on an uneven foundation. Plaintiff seeks to resolve all disputes stemming from the alleged, defective construction of the home through litigation in this court, rather than through arbitration pursuant to the Agreement. Conversely, JWH proffers that the Agreement signed by Gill mandates arbitration proceedings as the appropriate avenue to resolve the parties' disputes. As a result, JWH seeks to steer all of plaintiff's claims into binding arbitration under the terms of the Agreement. Thus, without addressing the merits or validity of plaintiff's underlying claims, this court addresses the limited question of whether JWH may compel Gill to initiate his claims in arbitration rather than in this court. *See United Steelworkers of Am. v. American Mfg. Co.*, 363 U.S. 564, 568, 80 S.Ct. 1343, 1347, 4 L.Ed.2d 1403 (1960).

We now turn to the merits of defendant's Motion to Stay Proceedings and Compel Arbitration.

## II. LAW AND ANALYSIS

### A. *The Federal Arbitration Act*

Title 9 of the FAA governs the disputed arbitration agreement in this case. Under Section 2 of the FAA, a written arbitration

"provision in any ... contract evidencing a transaction involving commerce ... [is] valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2 (West 1999). Here, the parties do not dispute that JWH's construction of Gill's home involved interstate commerce. Specifically, the Agreement itself expressly states that the parties acknowledged that some or all of the materials, fixtures, and equipment had their origin from sources outside the State of Louisiana. Furthermore, a party may challenge the validity of an arbitration agreement under general, state contract law. *Id.* Accordingly, Louisiana law, as it applies generally to all contracts, may be applied to determine the validity, revocability, and enforceability of the instant Agreement under the FAA. *Perry v. Thomas,* 482 U.S. 483, 492 n. 9, 107 S.Ct. 2520, 96 L.Ed.2d 426 (1987).

Section 3 of the FAA governs stays of court proceedings where the issues to be litigated are subject to arbitration. *See* 9 U.S.C. § 3 (West 1999). As a result, federal courts, upon being satisfied that an issue is subject to arbitration, and upon application of one of the parties, is authorized to stay the trial of the action "until such arbitration has been had in accordance with the terms of the agreement." *Id.*

Moreover, under Section 4 of the FAA, a "party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement," may petition the court "for an order directing that such arbitration" proceed. 9 U.S.C. § 4 (West 1999). Additionally, when a court is "satisfied that the making of the agreement for arbitration or the failure to comply there-

with is not in issue," the court is required to "make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement." *Id.*

## B. *Analysis of Arbitration Agreements*

At the outset, the court observes that there is a strong federal policy favoring the arbitration process.[1] *See Gilmer v. Interstate/Johnson Lane Corp.,* 500 U.S. 20, 25, 111 S.Ct. 1647, 1651, 114 L.Ed.2d 26 (1991) (noting that the Federal Arbitration Act manifests a liberal federal policy favoring arbitration agreements); *Shearson/American Express, Inc. v. McMahon,* 482 U.S. 220, 225, 107 S.Ct. 2332, 2337, 96 L.Ed.2d 185 (1987) (observing that there is a strong national policy encouraging the use of arbitration). The FAA "mandates that when an issue is referable to arbitration pursuant to a written agreement, the district court must stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement." *Williams v. Cigna Fin. Advisors, Inc.,* 56 F.3d 656, 659 (5th Cir.1995).

Because arbitration is a matter of contract, a court will not compel a party to arbitrate a dispute unless the party has agreed to arbitration. *See United Steelworkers of Am. v. Warrior & Gulf Navigation Co.,* 363 U.S. 574, 582, 80 S.Ct. 1347, 1353, 4 L.Ed.2d 1409 (1960); *BMA Fin. Services, Inc. v. Guin,* 164 F.Supp.2d 813, 817 (W.D.La.2001). Therefore, when confronted with a question whether a dispute is arbitrable, a district court must determine, as a threshold matter, whether the grievance before it is subject to arbitration. *See Folse v. Richard Wolf Med. Instruments, Corp.,* 56 F.3d 603, 605 (5th Cir.1995).

---

1. This court notes, however, that the policy favoring arbitration may only tip the balance in favor of arbitration after it is determined that an agreement to arbitrate exists. *See BMA Fin. Services v. Guin,* 164 F.Supp.2d 813, 820, 821 (W.D.La.2001).

To decide whether a dispute must be arbitrated under the FAA, a court must conduct the following two-step inquiry: (1) whether a valid agreement to arbitrate exists; and (2) whether legal constraints external to the parties' agreement foreclosed the arbitration of those claims. *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.,* 473 U.S. 614, 628, 105 S.Ct. 3346, 3355, 87 L.Ed.2d 444 (1985); *Webb,* 89 F.3d at 257–58 (5th Cir.1996). The Fifth Circuit divides the first of these two steps into two (2) considerations: (1) whether there is a valid agreement to arbitrate between the parties; and (2) whether the dispute in question falls within the scope of that arbitration agreement. *Webb,* 89 F.3d at 258; *BMA Financial Services,* 164 F.Supp.2d at 817.

We first consider whether there is a valid agreement to arbitrate between the parties.

### 1. Whether the Parties Agreed to Arbitrate Plaintiff's Claims of Alleged, Inferior Construction

Under the first step of the analysis, courts generally apply ordinary state-law principals governing contract formation when deciding whether the parties have agreed to arbitrate the dispute in question. *Webb,* 89 F.3d at 257–58; *BMA Financial Services,* 164 F.Supp.2d at 817. Generally, if the parties' dispute arises from a contract, which contains an arbitration clause, a challenge to the contract as a whole under general contract law principles must be resolved by the arbitrator. *See Prima Paint Corp. v. Flood & Conklin Mfg. Co.,* 388 U.S. 395, 404, 87 S.Ct. 1801, 1806, 18 L.Ed.2d 1270 (1967). On the other hand, as in the instant case, if a party challenges only the arbitration clause under these principles, the court may determine the validity of the arbitration clause. *Id.* at 403–04, 87 S.Ct. at 1806; *Pennzoil Explo-*

*ration v. Ramco Energy Ltd.,* 139 F.3d 1061, 1066 (5th Cir.1998). As to this inquiry, we find that the arbitration provision in JWH's sales and construction contract is valid because it is a contractual provision supported by consideration and there are no reasons, either legal or equitable, to invalidate this private, contractual agreement to arbitrate. Gill's arguments to the contrary are examined below.

### a. Whether JWH Offered an Illusory Promise to Gill

■ Plaintiff first argues that the Agreement is invalid because the it lacks mutuality of obligation. Plaintiff complains that no mutuality of obligation exists between JWH and Gill because JWH reserved the right to disregard the Agreement by seeking judicial or nonjudicial relief under limited circumstances, thereby resulting in an unfair defendant advantage. This court disagrees. The Agreement does not provide defendant with carte blanche power to disregard the arbitration clause and file suit for any reason. Instead, defendant may only commence litigation under an extremely limited number of circumstances: (1) a suit to remedy foreclosure and ejectment; (2) a suit to establish quiet title and equitable lien; and (3) a suit to collect any sums due owing under the contract. Mutuality of obligation exists in an arbitration agreement where a defendant reserves the right, under limited circumstances, to seek judicial or nonjudicial relief. *See Quinn v. EMC Corp.,* 109 F.Supp.2d 681, 683 (S.D.Tex. 2000). Furthermore, here, as in *Quinn,* both plaintiff and defendant must submit to arbitration "any controversy or claim arising out of or relating to this contract, or the breach thereof, whether asserted as in tort or contract … [which] shall be settled by binding arbitration." In short, the Agreement binds JWH to an arbitrator's ruling, which defendant expressly ac-

knowledges. Mutuality of obligation, therefore, exists between the parties, and defendant's promise to arbitrate is not illusory. Where a "court finds that the parties are mutually obligated to arbitrate the dispute, it shall order arbitration, allowing the arbitrator to decide any other questions that have been raised by the parties." *ASW Allstate Painting & Constr. Co. v. Lexington Ins. Co.,* 188 F.3d 307, 311 (5th Cir.1999).

**b.** *Whether the Agreement's Fee Schedule is Unconscionable*

■ Plaintiff next contends that the cost of pursuing their state-law claims under the arbitration procedures is prohibitive, thereby making the Agreement invalid as unconscionable. Plaintiff, however, fails to cite any binding authority for this proposition. Instead, Gill concludes that he would not be able to afford the fees associated with arbitration under the J.A.M.S./Endispute Rules and Procedures. This testimony alone is not sufficient to render the arbitration agreement unconscionable. *See Williams v. Cigna Fin. Advisors,* 197 F.3d 752, 764–65 (5th cir.1999), cert. denied, 529 U.S. 1099, 120 S.Ct. 1833, 146 L.Ed.2d 777 (2000). In *Williams,* the Fifth Circuit has held that the mere possibility a plaintiff may have to share in the payment of the arbitrator's fees, without more, is not a sufficient reason to invalidate an arbitration agreement. *See id.* at 764. Furthermore, when a plaintiff fails to specify excessive arbitration costs and instead speculates that a "risk" exists that plaintiff will be saddled with prohibitive, arbitration proceeding costs, a court is not required to invalidate the arbitration agreement. *Green Tree Fin. Corp.—Alabama v. Randolph,* 531 U.S. 79, 90–91, 121 S.Ct. 513, 522, 148 L.Ed.2d 373 (2000). To date, the Agreement required plaintiff to pay a $250 filing fee, which this court does not find as excessive. Further, the Agreement expressly provides that the cost of arbitration shall be equally divided among the parties to the arbitration. The mere fact that plaintiff faces the possibility of being charged arbitration fees, including sharing the arbitrator's compensation if directed to do so by the arbitrator, does not make the Agreement unenforceable. Accordingly, this court concludes that plaintiff has failed to demonstrate that the Agreement provision relating to fees is unconscionable simply because he may eventually have to pay a portion of the arbitrator's fees.

**c.** *Whether the Designated Location for Arbitration Renders the Agreement Invalid.*

■ Plaintiff's also argues that being forced to arbitrate in a "far-away forum" violates public policy. Plaintiff has failed to cite a single case to support his position. In *Webb,* the court upheld an arbitration provision that called for the Texas-based plaintiff to proceed with arbitration in the county where the Florida defendant maintained its executive offices. *Webb,* 89 F.3d at 259. Here, the Agreement mandates that the arbitration to be conducted in either Baton Rouge or New Orleans, both of which are located in plaintiff's domicile state. Thus, the court remains unpersuaded that this factor renders the Agreement invalid, especially in light of all the other factors that support enforcing the Agreement.

**4.** *Whether Plaintiff Proved the Agreement to be Procedurally or Substantively Unconscionable*

■ In the absence of more persuasive evidence, the court does not find the Agreement procedurally unconscionable, because plaintiff has failed to show "overreaching or sharp practices" by JWH and "ignorance or inexperience" on the part of

Gill. *Arkwright–Boston Mfrs. Mut. Ins. Co. v. Westinghouse Elec. Corp.*, 844 F.2d 1174, 1184 (5th Cir.1988). On 19 October 1998, when JWH presented the sales and construction contract to Gill for review and signature, Gill initialed paragraph nine (9) of the contract, which acknowledged the existence of the Agreement. Further, on the same date, JWH contemporaneously delivered a separate, one-page, legible Agreement to Gill for review and signature, which Gill signed. Moreover, on 29 November 1998, the parties executed a new sales contract and Agreement, which Gill also voluntarily signed. Finally, according to the sales and construction contract, Gill had the opportunity to cancel the entire transaction anytime before midnight of the third business day after the date of contract. Even if Gill had doubts about the applicability of the Agreement at time of signature, JWH provided Gill with an opportunity to review the documents and cancel the contract. This court finds that Gill had sufficient time either to review the Agreement or secure legal advice. As a result, JWH's actions do not rise to the level of "overreaching or sharp practices."

■ Likewise, plaintiff has failed to show that the terms of the Agreement were "one-sided or oppressive" so as to constitute substantive unconscionability. *Arkwright–Boston*, 844 F.2d at 1184. Plaintiff has certainly failed to show that "no man in his senses and not under a delusion would enter into and ... no honest and fair person would accept a contract on such terms." *Lindemann v. Eli Lilly and Co.*, 816 F.2d 199, 204 (5th Cir.1987). As the court has previously detailed, under the terms of the Agreement, both parties are bound by the ruling of the arbitrator over "any controversy or claim arising out of or relating to th[e] contract," other than a few select suits relating to, among others, foreclosure or quieting title.

Plaintiff, however, cites *Sutton's Steel & Supply, Inc. v. Bellsouth Mobility, Inc.*, 776 So.2d 589 (La.App. 3 Cir.2000), in support of his argument that the Agreement was substantively unconscionable. Plaintiff's reliance on *Sutton's Steel* is misplaced. In *Sutton's Steel*, the court focused on the exceedingly small print of Bellsouth's standard arbitration contract, which placed the plaintiff in a disadvantageous position, thereby raising the issue of whether the plaintiff freely bargained or negotiated for the arbitration agreement. *See Sutton's Steel*, 776 So.2d at 594–96. Conversely, in the instant case, JWH presented the Agreement as a separate document in clearly legible, standard sized font, thereby emphasizing the importance and uniqueness of the Agreement.

Finally, plaintiff makes reference to a possible educational disadvantage, which caused plaintiff to be unaware of the alleged disparate nature of the Agreement, thereby vitiating his ability to freely bargain or understand what rights plaintiff may have been suspending. Even assuming plaintiff is correct, "It is not within the province of the courts to relieve parties of their bad bargains." *Hanover Petroleum Corp. v. Tenneco, Inc.*, 521 So.2d 1234, 1240 (La.App. 3 Cir.1988), *writ denied*, 526 So.2d 800 (La.1988). Moreover, "[t]he law does not compel people to read or to inform themselves of the contents of an instrument which they may choose to sign, but it holds them to the consequences in the same manner and to the same extent as though they had exercised those rights." *McGoldrick v. Lou Ana Foods, Inc.*, 649 So.2d 455, 460 (La.App. 3 Cir. 1994).

The court finds the circumstances of the sale and contract to be routine. To declare the Agreement unconscionable would

be to outlaw arbitration per se in the large majority of residential real estate sales contracts. Holding this Agreement unconscionable based on plaintiff's arguments and evidence would negate the public policy in favor of arbitration. We hold, therefore, there is no evidence to support a finding that the Agreement is procedurally or substantively unconscionable.

### 2. Whether Plaintiff's Claims Are Within the Scope of the Arbitration Agreement.

■ Having concluded that plaintiff has failed in his attempt to demonstrate the Agreement to be unconscionable or invalid, the court must now perform the second step of the arbitration analysis: determine whether plaintiff's claims against JWH are encompassed within the four corners of the Agreement. See Webb, 89 F.3d at 257–58. In short, the second step focuses on the breadth of the arbitration agreement to resolve whether the parties' disputes fall within the Agreement's reach. As stated earlier, the Agreement provides the following: "at the election of either party, any controversy or claim arising out of or relating to this contract, or breach thereof, whether ... as a federal or state statutory claim ... shall be settled by binding arbitration." Both the Supreme Court and the Fifth circuit have characterized similar arbitration clauses as broad arbitration clauses capable of expansive reach. See Prima Paint Corp., 388 U.S. at 397–98, 87 S.Ct. at 1802–03 (labeling as "broad" a clause requiring arbitration of "[a]ny controversy or claim arising out of or relating to this Agreement"); Nauru Phosphate Royalties, Inc. v. Drago Daic Interests, Inc., 138 F.3d 160, 164–65 (5th Cir.1998) (holding that when parties agree to an arbitration clause governing "[a]ny dispute ... arising out of or in connection with or relating to this Agreement," they "intend the clause to reach all aspects of the rela-

tionship."). The terms of the Agreement clearly embrace all claims brought under federal and state statutes. Because all plaintiff's claims are covered by the Agreement, they are properly referable to an arbitral forum. See Pennzoil Exploration, 139 F.3d at 1069–70; see also, Wick v. Atlantic Marine, Inc., 605 F.2d 166, 168 (5th Cir.1979) (stating that "unless it can be said with positive assurance that an arbitration clause is not susceptible of an interpretation which would cover the dispute at issue, then a stay pending arbitration should be granted.") Plaintiff's claims against JWH squarely fall within the scope of the Agreement; therefore, JWH has met the elements of the second step of the arbitration analysis.

### 3. Whether Legal Constraints External to the Parties' Agreement Foreclose the Arbitration of Plaintiff's Claims.

Under the third step of the arbitration analysis, the Supreme Court has explained that the only "legal constraints external" to the arbitration agreement which are of significance are those evidencing "a contrary congressional command." Shearson/Am. Express, 482 U.S. at 226, 107 S.Ct. at 2337. Like any statutory directive, the FAA's mandate may be overridden by a contrary congressional command. The burden is on the party opposing arbitration, however, to demonstrate that Congress intended to preclude a waiver of judicial remedies for the statutory rights at issue. Importantly, the third step of the analysis focuses on conflicting federal legislation, and the contention that federally-mandated arbitration runs afoul of a state statutory scheme is generally irrelevant. See Swenson v. Management Recruiters Int'l, Inc., 858 F.2d 1304, 1309 (8th Cir.1988) overruled on other grounds by Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20,

111 S.Ct. 1647, 114 L.Ed.2d 26 (1991). Furthermore, the FAA is endowed with a pre-emptive force under the Supremacy Clause. *See Perry,* 482 U.S. at 491–92 n. 8, 107 S.Ct. at 2526–27 n. 8. In the instant case, plaintiff has failed to meet his burden that the FAA should not apply to the dispute between plaintiff and JWH.

## III. CONCLUSION

For the foregoing reasons, defendant's Motion to Stay Proceedings and Compel Arbitration is GRANTED. Therefore, it is ORDERED that plaintiff must arbitrate all claims. Because these proceedings are STAYED pending completion of arbitration, the court declines to reach the merits of defendants Rule 12(b)(6) Motion to Dismiss plaintiff's claims. The parties are ORDERED to file no further pleadings on this issue. Once the arbitration process has been completed, the parties will be free to file a motion with the court seeking enforcement of the arbitrator's decision. After the court has rule on any such motion, the parties will then be instructed to seek any further relief to which they feel themselves entitled in the United States Court of Appeals for the Fifth Circuit, as may be appropriate in due course. The parties are further ORDERED to bear their own taxable costs and expenses incurred herein to date.