NUMBER 13-09-00423-CV



COURT OF APPEALS



THIRTEENTH DISTRICT OF TEXAS



CORPUS CHRISTI - EDINBURG


 

 

IN RE HEB GROCERY COMPANY, L.P.
 

 


On Petition for Writ of Mandamus.


 


 O P I N I O N



Before Chief Justice Valdez and Justices Yañez and Benavides


Opinion by Chief Justice Valdez (1)
 Through this original proceeding, relator, HEB Grocery Company, L.P. ("HEB"),
seeks to compel the trial court to vacate its order denying HEB's motion to compel
arbitration. We conditionally grant the petition for writ of mandamus.

I. Background


 Jaime Bustamante, the real party in interest, was employed by HEB as a meat
cutter. He was injured in the course and scope of his employment and brought suit against
HEB, a non-subscriber to workers' compensation, for negligence and gross negligence. 
HEB moved to compel arbitration of Bustamante's claims based on his participation in
HEB's Work Injury Benefit Plan (the "Plan"). As part of his employment with HEB,
Bustamante signed an "Election and Agreement Form" (the "Election") through which he,
as a "Partner," elected to receive comprehensive benefits coverage under the Plan. The
form signed by Bustamante specifically provides that: 

 Partner . . . elects to receive [c]omprehensive benefits coverage under the
Plan and agrees to irrevocably and unconditionally release all claims and
causes of action whether now existing or arising in the future and to waive
the right to sue . . . for the occupational injury, death or disease of the
Partner arising out of and in the course and scope of employment, in
exchange for the right to receive [c]omprehensive benefits coverage under
the terms of the Plan. . . .


 Partner . . . agrees that recovery from H-E-B . . . for occupational injury,
death, or disease, arising out of and in the course and scope of employment,
is limited to benefits provided by the Plan. . . .


The Election further includes a specific "Arbitration" provision which provides:


 It is agreed that any and all disputes, claims, (whether tort, contract, statutory
or otherwise) and/or controversies which relate, in any manner, to this
Agreement, the Plan, or the Trust or to the occupational injury, death or
disease of Partner shall be submitted to final and binding arbitration under
the Federal Arbitration Act, in accordance with the terms and conditions
outlined in the SPD under the heading "Arbitration of Disputes." The claims
covered by this agreement to arbitrate include, but are not limited to, those
which relate to the following:


 a. The formation, application and interpretation of this Agreement.


 b. Eligibility for benefits from the Trust, coverage under the Plan or
claims for damages or monetary award.


 c. That H-E-B has discharged or in any manner discriminated against
Partner because Partner in good faith filed a claim, hired a lawyer to
represent him or her in a claim, instituted, or caused to be instituted,
in good faith, any proceeding under the Agreement, the Plan or the
TWCA, or has testified in any such proceeding.


The Election includes a section entitled "Election of Comprehensive Benefits [-] Release,
Waiver, Indemnity, and Arbitration Agreement," which informed Bustamante that by signing
the agreement, he was giving up his right to sue HEB and related entities "in exchange for
the agreement to provide certain benefits" and that he was agreeing to "arbitrate all future
disputes." 

 HEB filed a motion to compel arbitration arguing that Bustamante was required to
arbitrate his claims under the agreement and Plan. By written response, Bustamante
argued solely that the arbitration agreement was illusory because HEB retained the
"unfettered" right to amend or terminate the plan. HEB filed an amended motion to compel
arbitration and filed affidavits in support of its motion to compel. Following a non-evidentiary hearing, the trial court denied the motion to compel arbitration. This original
proceeding ensued. 

 The trial court's order denying arbitration did not specify whether the arbitration
agreement in this case was governed by the Federal Arbitration Act ("FAA") or the Texas
Arbitration Act ("TAA"). See 9 U.S.C. §§ 1-16 (1999) (FAA); Tex. Civ. Prac. & Rem. Code
Ann. §§ 171.001-.098 (Vernon 1997 & Supp. 2008) (TAA). However, HEB seeks review
of the trial court's order pursuant to the FAA. See Jack B. Anglin Co., Inc. v. Tipps, 842
S.W.2d 266, 272 (Tex. 1992) (providing that litigants alleging entitlement to arbitration
under the FAA and TAA must pursue parallel proceedings), and we proceed to address
this matter accordingly.

II. FAA


 The FAA applies to transactions that involve commerce. See 9 U.S.C. § 2 (2005).
"Commerce" has been broadly defined and encompasses contracts relating to interstate
commerce. See In re Gardner Zemke Co., 978 S.W.2d 624, 626 (Tex. App.-El Paso
1998, orig. proceeding). The FAA does not require a substantial effect on interstate
commerce; rather, it requires commerce to be involved or affected. See L & L Kempwood
Assocs., L.P. v. Omega Builders, Inc. (In re L & L Kempwood Assocs., L.P.), 9 S.W.3d
125, 127 (Tex. 1999) (orig. proceeding); In re Merrill Lynch Trust Co. FSB, 123 S.W.3d
549, 553 (Tex. App.-San Antonio 2003, orig. proceeding). 

 According to affidavit testimony proffered by Mark S. Lewis, the Director of
Corporate Traffic in the Transportation Logistics Department of HEB, HEB conducts its
business activities across state lines and is involved in numerous transactions involving
interstate commerce. Lewis's affidavit states that HEB purchases its products for retail in
Texas from numerous states and the Pacific Rim countries, and includes specific details
regarding the out-of-state origin of certain products that it sells. Absent evidence to the
contrary, "the relationship between an employer who is regularly engaged in activities
related to interstate commerce and its employees is affected by interstate commerce as
a matter of law and implicates commerce clause issues." In re Big 8 Food Stores, Ltd.,
166 S.W.3d 869, 880 (Tex. App.-El Paso 2005, orig. proceeding). 

 Moreover, the Election and Plan themselves expressly provide that arbitration will
be handled "under the Federal Arbitration Act." See In re Brock Specialty Servs., LTD.,
286 S.W.3d 649, 653 (Tex. App.-Corpus Christi 2009, orig. proceeding); In re People's
Choice Home Loan, Inc., 225 S.W.3d 35, 40 (Tex. App.-El Paso 2005, orig. proceeding);
In re Kellogg Brown & Root, 80 S.W.3d 611, 617 (Tex. App.-Houston [1st Dist.] 2002, orig.
proceeding); In re Alamo Lumber Co., 23 S.W.3d 577, 579 (Tex. App.-San Antonio 2000,
orig. proceeding [leave denied]); see also Volt Info. Scis. v. Bd. of Trs., 489 U.S. 468,
478-79 (1989). The Plan itself states that HEB is engaged in transactions involving
interstate commerce and that Bustamante's employment involves such commerce. 

 The FAA may govern a written arbitration clause enforced in Texas state court if the
parties have expressly contracted for the FAA's application. In re AdvancePCS Health,
L.P., 172 S.W.3d 603, 605-06 & n.3 (Tex. 2005) (orig. proceeding) (per curiam). When
parties have designated the FAA to govern their arbitration agreement, their designation
should be upheld. See id. at 606 & n.3; In re Brock Specialty Servs., LTD., 286 S.W.3d
at 653; see also In re Int'l Bank of Commerce, No. 13-07-00693-CV, 2008 Tex. App. LEXIS
519, at **16-17 (Tex. App.-Corpus Christi Jan. 18, 2008, orig. proceeding [mand. denied])
(mem. op.). Bustamante asserts a defense against arbitration, generally, but does not
contest the application of the FAA. Accordingly, pursuant to the parties' agreement, we
apply the FAA.

 When a trial court erroneously denies a motion to arbitrate under the FAA,
mandamus is the appropriate remedy. In re Halliburton Co., 80 S.W.3d 566, 573 (Tex.
2002) (orig. proceeding); see 9 U.S.C.A. § 4 (2005) (section 4 of the FAA provides, in part,
that "[a] party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate
under a written agreement for arbitration may petition . . . for an order directing that such
arbitration proceed in the manner provided for in such agreement"); Nabors Drilling USA,
LP v. Carpenter, 198 S.W.3d 240, 246 (Tex. App.-San Antonio 2006, orig. proceeding).

III. Standard of Review


 To be entitled to mandamus relief, a petitioner must show that the trial court clearly
abused its discretion and that the relator has no adequate remedy by appeal. In re
Prudential Ins. Co. of Am., 148 S.W.3d 124, 135-36 (Tex. 2004) (orig. proceeding) (citing
Walker v. Packer, 827 S.W.2d 833, 840 (Tex. 1992) (orig. proceeding)); see In re McAllen
Med. Ctr., Inc., 275 S.W.3d 458, 462 (Tex. 2008) (orig. proceeding). We may not
substitute our judgment for that of the trial court with respect to the resolution of factual
issues or matters within the trial court's discretion. Walker, 827 S.W.2d at 839-40. The
relator must show that the trial court could reasonably have reached only one decision. 
Id. The reviewing court cannot disturb the trial court's decision unless it is shown to be
arbitrary and unreasonable. Id. With respect to the trial court's decision on legal issues,
our review is much less deferential. Id. at 840. A trial court has no discretion in
determining what the law is or applying the law to the facts. Id. Thus, a clear failure by the
trial court to analyze or apply the law correctly will constitute an abuse of discretion. Id. 

 IV. Validity and Scope


 A party seeking to compel arbitration by a writ of mandamus must: (1) establish the
existence of a valid agreement to arbitrate under the FAA, and (2) show that the claims in
dispute are within the scope of the agreement. In re Kellogg Brown & Root, Inc., 166
S.W.3d 732, 737 (Tex. 2005) (orig. proceeding). "Whether a valid arbitration agreement
exists is a legal question subject to de novo review." In re D. Wilson Constr. Co., 196
S.W.3d 774, 781 (Tex. 2006) (orig. proceeding). In determining the validity of agreements
to arbitrate which are subject to the FAA, we generally apply state-law principles governing
the formation of contracts. In re Palm Harbor Homes, Inc., 195 S.W.3d 672, 676 (Tex.
2006) (orig. proceeding) (citing First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 944
(1995)). If the trial court finds there is a valid agreement to arbitrate, the burden shifts to
the party opposing arbitration to prove his defenses. J.M. Davidson, Inc. v. Webster, 128
S.W.3d 223, 227 (Tex. 2003). 

 Once a valid agreement to arbitrate has been established, the court must then
determine whether the arbitration agreement covers the nonmovants' claims. In re
FirstMerit Bank, N.A., 52 S.W.3d 749, 753 (Tex. 2001) (orig. proceeding). To determine
whether an existing arbitration agreement covers a party's claims, a court must "focus on
the complaint's factual allegations rather than the legal causes of action asserted." Id. at
754. Federal policy embodied in the FAA favors agreements to arbitrate, and courts must
resolve any doubts about an arbitration agreement's scope in favor of arbitration. Id. at
753. If the arbitration agreement encompasses the claims and the party opposing
arbitration has failed to prove its defenses, the trial court has no discretion but to compel
arbitration and stay its own proceedings. Id. at 753-54; D.R. Horton, Inc. v. Brooks, 207
S.W.3d 862, 866-67 (Tex. App.-Houston [14th Dist.] 2006, no pet.); Feldman/Matz
Interests, L.L.P. v. Settlement Capital Corp., 140 S.W.3d 879, 883 (Tex. App.-Houston
[14th Dist.] 2004, no pet.).

 In the instant case, the Election provides that it covers "all future disputes" and
specifically includes "occupational injury, death or disease of the Partner arising out of and
in the course and scope of employment." The Plan itself states that "[i]n an effort to
provide a speedy resolution of any potential issues, both H-E-B and its Partners, agree to
arbitration of any disputes related to an on-the-job injury/incident or occupational illness." 
The Plan's arbitration provision states that it applies to "any and all disputes, claims
(whether tort, contract, statutory or otherwise) and/or controversies which relate, in any
manner to this agreement, the Plan or the Trust, or to any on-the-job or occupational injury,
death or disease of Partner." 

 Bustamante's arguments below and on appeal do not deny the existence of the
Election or the Plan or his signed acknowledgment thereof, nor does he argue that his
claims fall outside the scope of the Plan. Accordingly, we conclude that relator has
established the existence of an arbitration agreement, and, given the breadth of the
arbitration agreement, that the claims in this lawsuit fall within the scope of this agreement. 
See, e.g., In re FirstMerit Bank, N.A., 52 S.W.3d at 754.

V. Illusory


 Having concluded that a valid arbitration agreement exists and Bustamante's claims
fall within the scope of that agreement, we now turn our attention to Bustamante's alleged
defenses to arbitration. See In re H.E. Butt Grocery Co., 17 S.W.3d 360, 367 (Tex.
App.-Houston [14th Dist.] 2000, orig. proceeding) (disapproved in part on other grounds
by In re Halliburton, 80 S.W.3d at 570); City of Alamo v. Garcia, 878 S.W.2d 664, 665
(Tex. App.-Corpus Christi 1994, no writ). Bustamante contends that the arbitration
agreement is illusory because "under the terms of the arbitration agreement, HEB retained
the absolute and unfettered right to unilaterally amend or terminate its Work benefit Injury
Plan at any time."

 An arbitration agreement may be illusory if a party can unilaterally avoid the
agreement to arbitrate. See In re Palm Harbor Homes, Inc., 195 S.W.3d at 677; D.R.
Horton, Inc., 207 S.W.3d at 867 ("An illusory promise is one that fails to bind the promisor
because he retains the option of discontinuing performance without notice."). Stated
otherwise, a promise is illusory when it fails to bind the promisor, who retains the option of
discontinuing performance. See Light v. Centel Cellular Co., 883 S.W.2d 642, 645 (Tex.
1994); see also O'Farrill Avila v. Gonzalez, 974 S.W.2d 237, 244 (Tex. App.-San Antonio
1998, writ denied). 

 In the instant case, the Election provides that "H-E-B and the Trustees reserve the
right to amend or terminate the Plan. Non-material changes, increased benefits,
procedural changes, and changes that do not apply to Partner will not terminate this
Agreement and it shall remain in full force and effect . . . ." The Election expressly provides
that the "[Summary Plan Description] attached to the Agreement and the Plan and Trust,
which are available for your review, are incorporated in this Agreement by reference." The
Summary Plan Description further addresses termination or modification of the agreement:

 If the Plan Changes or Ends: Although H-E-B expects to continue the Plan
indefinitely, H-E-B reserves the right to amend or terminate the Plan at any
time. No amendment shall apply to any claim of which H-E-B has actual
notice on the date of amendment. No amendment or termination shall be
effective until 10 days after reasonable notice of termination or amendment
is provided by H-E-B or as to claims that arose prior to the date of
amendment or termination. No amendment or termination of the Plan will
affect any claim for expenses incurred prior to the date the amendment or
termination is adopted, except as permitted by law. No amendment may
divert any part of the assets of the trust fund for purposes other than
providing benefits under the Plan and paying the reasonable expenses of
administering the Plan. . . .

 

Finally, the "Partner Acknowledgment" further states that "H-E-B and the Trustees reserve
the right to amend or terminate the Plan subject to the notice requirements and the
provisions of the Plan."

 The Texas Supreme Court has considered and expressly rejected the argument that
language similar to that herein rendered an arbitration agreement illusory. See In re
Halliburton Co., 80 S.W.3d at 570. In Halliburton, the employee dispute resolution program
provided that "no amendment shall apply to a Dispute of which the Sponsor [Halliburton]
had actual notice on the date of amendment." See id. at 570. The program further stated
that "termination shall not be effective until 10 days after reasonable notice of termination
is given to Employees or as to Disputes which arose prior to the date of termination." See
id. The supreme court concluded that Halliburton could not avoid its promise to arbitrate
by amending the provision or terminating it altogether and held that the provision was not
illusory. See id. 

 The Houston Court of Appeals has expressly considered and rejected the argument
that the specific arbitration agreement at issue herein is illusory. See In re H.E. Butt
Grocery Co., 17 S.W.3d at 370. In reaching this conclusion, our sister court noted that:

 First, the SPD specifically provides that while "HEB expects to continue the
Plan indefinitely . . . no amendment or termination of the Plan will affect any
claim for expenses incurred prior to the date the amendment or termination
is adopted, except as provide by law." In other words, HEB's right to
terminate the Plan does not deprive Swinton of benefits already accrued
under the Plan. Second, if HEB terminates the Plan, it will leave Swinton
with all of his common law rights against HEB as a non-subscriber. Third,
assuming HEB's promise to provide benefits under the Plan is illusory, the
parties formed a unilateral contract when HEB actually provided, and
Swinton accepted, benefits in return for Swinton's promise not to sue. 
Finally, the fact that the plan administrator has discretion to interpret the Plan
does not excuse HEB from its obligation to pay benefits. It merely provides
the means by which a court can review the administration of the Plan under
ERISA. Clearly, the benefit agreement is not illusory.


See id. (internal citations omitted). As in the foregoing case, we note that Bustamante
herein also sought and received employee benefits under the Plan prior to filing suit
against HEB.

 Contrary to Bustamante's argument, HEB did not retain a unilateral right to
terminate or change the provisions of the arbitration agreement, and accordingly, we reject
Bustamante's arguments that the agreement is illusory. See J.M. Davidson, Inc., 128
S.W.3d at 230; In re Halliburton, 80 S.W.3d at 569-70; In re H.E. Butt Grocery Co., 17
S.W.3d at 370. HEB's right to amend or terminate the Program is qualified: any
amendment or termination of the arbitration agreement is subject to ten days' notice to the
employee and is inapplicable to claims that have already been initiated. As such, the
promise to arbitrate is not illusory, and the agreement to arbitrate is enforceable. See In
re Halliburton, 80 S.W.3d at 569-70; In re H. E. Butt Grocery Co., 17 S.W.3d at 370; see
also In re Kellogg Brown & Root, 80 S.W.3d at 616 (holding that an agreement to arbitrate
was not illusory when it could be amended or terminated by giving at least ten days' notice
and such amendments would not apply to a dispute for which proceedings had been
initiated); Nabors Drilling USA, LP, 198 S.W.3d at 248-49 (reaching the same result based
on similar language). 




VI. Conclusion

 In conclusion, having rejected Bustamante's alleged defense to arbitration, we
conditionally grant HEB's petition for writ of mandamus. We direct the trial court to vacate
its order denying arbitration and to issue an order compelling arbitration. We are confident
that the trial court will promptly comply, and our writ will issue only if it does not.


 _______________________

 ROGELIO VALDEZ

 Chief Justice


Opinion delivered and filed this

the 28th day of September, 2009.
1. See Tex. R. App. P. 47.4 (distinguishing opinions and memorandum opinions); Tex. R. App. P. 
52.8(d) ("When granting relief, the court must hand down an opinion as in any other case.").